UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3/18/19

----------------------------------------------------------- X
                             :

FLATIRON ACQUISITION VEHICLE, LLC  :
and CS PARADISO HOLDINGS, LLC,     :
                             :
                             :
                 Plaintiffs,  :             1:17-cv-8987-GHW
                             :
           -v-             :      MEMORANDUM OPINION
                             :         AND ORDER
CSE MORTGAGE LLC, CAPITALSOURCE  :
COMMERCIAL LOAN, 2006-2,         :
CAPITALSOURCE FINANCE LLC, and   :
CAPITALSOURCE INC.            :
                             :
                Defendants.  :
                             :
----------------------------------------------------------- X

## I.   INTRODUCTION

In March of 2013, Flatiron Acquisition Vehicle ("Flatiron") expressed interest in acquiring CS Paradiso Holdings, LLC ("Paradiso" or the "Company"), a real estate company owned and controlled by CSE Mortgage LLC ("CSE"), CapitalSource Commercial Loan, 2006-2 ("CapitalSource Commercial Loan"), CapitalSource Finance LLC ("CapitalSource Finance), and CapitalSource Inc ("CapitalSource"). Before entering into a purchase agreement to purchase the Company, Flatiron Acquisition Vehicle learned of underlying, unresolved litigation involving Paradiso and the Tellico Village Property Owners Association (the "TVPOA"), which managed properties that Paradiso owned and collected assessments from the owners of these properties. Flatiron wanted the litigation to be resolved before it acquired the Company, but, inexplicably—or at least unexplained here—its counsel failed to require that the litigation be fully resolved as a condition to closing in the purchase agreement.

Before closing on Flatiron's acquisition of the Company, the TVPOA, Paradiso Holdings, Capital Source Finance, and Capital Source entered a settlement agreement in which Paradiso,

CapitalSource, and CapitalSource Finance each assumed obligations to convey deeds or record documents required to transfer ownership of lots in the Tellico Village from Paradiso back to the TVPOA. Shortly thereafter, Flatiron purchased Paradiso with full knowledge of the obligations that the settlement agreement created, but because final resolution of the settlement agreement was not a condition to the closing, Paradiso had continuing obligations under the settlement agreement after Flatiron acquired it.

Paradiso and its now former owners, the defendants here, were not swift to fulfill their obligations under the settlement agreement and the TVPOA resorted to litigation to force their hand. In February 2014, after six months of non-compliance, the TVPOA sued Paradiso—now owned by Flatiron—CapitalSource, and CapitalSource Finance to compel them to record the documents and transfer the properties. The TVPOA first filed suit in 2014, but voluntarily dismissed the case after the required records were properly recorded and the deeds conveyed.

Paradiso, however, not only failed to honor its obligations under the settlement agreement. It also failed to pay its assessments to the TVPOA for the lots in the Tellico Village. In May 2015, the TVPOA again sued in a Tennessee Chancery Court, seeking to recover the unpaid assessments and other fees associated with the lots that Paradiso was meant to convey to the TVPOA. The court found that Paradiso was the holdover owner of the lots in question, that it had defaulted on its obligation to pay assessments and fees associated with the properties that it was meant to convey to the TVPOA in August of 2013. The Court and entered an order for summary judgment in the amount of $550,993.83 against Paradiso.

Now, Paradiso—together with its owner Flatiron—comes to this Court alleging that the defendants, by their acts and omissions, share responsibility for the damages that Paradiso sustained as a result of its failure to comply timely with the original settlement agreement. Because the settlement agreement imposed joint and several obligations on the defendants as well as Paradiso,

the motion to dismiss the contractual claims is denied; the remaining claims are dismissed for the reasons set forth below.

## II.    BACKGROUND

### A.  *Tellico Village and the TVPOA*

Established in 1985, Tellico Village is a planned residential and commercial community that consists of over 5,000 acres of land alongside the Tellico Lake in Loudon County, Tennessee.  Dkt. No. 41, Second Amended Complaint ("SAC") ¶ 35.  The TVPOA serves as Tellico Village's manager.  *Id.* ¶ 18.  TVPOA's responsibilities include managing the Tellico Village properties as well as collecting annual assessment fees from residents and owners of the lots located within the community.  *Id.* ¶ 37.  Under the terms of the declaration of covenants and restrictions for Tellico Village (the "Declaration"), every owner of Tellico Village lots agreed to pay to the TVPOA an annual assessment fee (the "Assessments").  *Id.* ¶ 38.  The TVPOA collects the Assessments on a monthly basis at a fixed rate for the year.  *Id.* ¶ 39.  Pursuant to Section 7 of Article X of the Declaration, if a resident or owner of a Tellico Village lot fails to timely remit payment, the Assessments become delinquent.  *Id.*  ¶ 40; Ex. C at 17.  In the case of delinquency, the TVPOA has authority under the terms of the Declaration to declare the Assessments for the entire year due, with interests and extra costs.  *Id.*

Paradiso was formed on or around October 28, 2009 for the purpose of holding title to and managing real property in Tellico Village.  *Id.* ¶¶ 33, 34; *see also* Dkt. No. 45, Defendants' Memorandum of Law in Support of Motion to Dismiss ("Defendants' Memorandum") at 2.  Around December 22, 2009, the members of Paradiso executed its operating agreement and named CSE as the Company's manager.  *Id.* ¶ 33.  The defendants in this case—CSE, CapitalSource Commercial Loan, CapitalSource, and CapitalSource Finance (collectively, the "Defendants")—exercised complete control over Paradiso.  *Id.* ¶ 42.  Because Paradiso had invested in real property

located in Tellico Village while under the Defendants' control, it was required to comply with the terms of the Declaration, including the requirement to pay the Assessments with respect to the properties that it owned; however, Paradiso repeatedly failed to make the required payments to the TVPOA. *Id.* ¶ 43.

Around March 18, 2013, Flatiron, a real estate investment company, expressed interest in purchasing Paradiso. *Id.* ¶ 44. Before Flatiron completed the purchase, it discovered that the TVPOA had filed suit against defendants CapitalSource, CapitalSource Finance, and Paradiso in Loudon County Tennessee's Chancery Court because they had failed to pay the Assessments owed with respect to the properties owned by Paradiso[1] (the "Loudon County Lawsuit"). *Id.* ¶¶ 44-45. The Loudon County Lawsuit caused Flatiron to reconsider purchasing Paradiso and, in an e-mail dated June 21, 2013, Flatiron explained that the purchase was contingent on Defendants' resolving the lawsuit. *Id.* ¶ 47; Ex. D. However, as discussed below, Flatiron did not make the resolution of the case an express condition precedent in their purchase agreement—if it had, this lawsuit would never have begun.

Defendants CapitalSource and CapitalSource Finance retained Hodges, Doughty & Carson, PLLC (the "Hodges Firm") to represent them and Paradiso in the Loudon County Lawsuit. *Id.* ¶ 48. Oliver Adams, an attorney at the Hodges Firm, appeared as the attorney of record on behalf of Defendants and Paradiso. *Id.* On June 6, 2012, the TVPOA filed a motion for partial summary judgment only with respect to Paradiso. *Id.* ¶ 50. The Hodges Firm was unsuccessful in its defense of the motion. *Id.* On or around November 26, 2012, the chancery court issued an order awarding TVPOA a money judgment against Paradiso in the amount of $1,263,881.68 to account for the unpaid Assessments and fees accrued over several years. *Id.* ¶ 51. During the course of the Loudon County Lawsuit, Sue Choi served as associate general counsel for Defendants and directed Adams's

---

[1] *Tellico Village Prop. Owners Ass'n, Inc. v. Nat'l Recreational Properties of Tellico Village, LLC, et al.*, Dkt. No. 11751.

conduct during the litigation.  *Id.* ¶ 52.

B.  *The Settlement Agreement*

On July 19, 2013, the TVPOA, Paradiso, and defendants CapitalSource and CapitalSource Finance executed a settlement agreement (the "Settlement Agreement") that resolved the Loudon County Lawsuit.  *Id.* ¶ 53.  Among other conditions, the Settlement Agreement required Paradiso to transfer 272 parcels of land that it owned to the TVPOA by quitclaim deed (the "TVPOA Parcels"). *Id.* ¶ 53.  The Settlement Agreement also required:

> Defendants[2] or their affiliates, successors or assigns, as applicable, [to] promptly record releases of all Deeds of Trust, Security Agreements, Fixture Filings, Assignments of Rents and Leases, and amendments thereto, or similarly security instruments of record, which may encumber the [p]roperties in favor of any of the Defendants or their affiliates, successors or assigns . . . .

*Id.* Ex. A, § 1.

Specifically, Section 1 of the Settlement Agreement imposes two requirements relevant to this case.  Section 1(i) provides, "[Paradiso] shall convey the parcels of real property . . . to [the TVPOA] or its designee by quitclaim deed, and shall also assign all of its interest in the corresponding contract for deeds for the Properties . . . ."  *Id.* Ex. A, § 1(i).  Section 1(ii) states, "[Paradiso, CapitalSource, and CapitalSource Finance] or their affiliates, successors or assigns, as applicable, shall promptly record releases of all Deeds of Trust, Security Agreements, Fixture Filings, Assignments of Rents and Leases, and amendments thereto, or similar security instruments of record, which may encumber the properties in favor of any of the Defendants or their affiliates, successors or assigns" (the "Release Documents").  *Id.* Ex. A, § 1(ii).  Section 3 of the Settlement Agreement provides, "the quitclaim deed and the Release Documents shall be recorded on or before August 19, 2013."  *Id.* Ex. A, § 3.  Pursuant to Section 19, the obligations under the agreement bound each signatory jointly and severally.  *Id.* Ex. A, § 19.

---

[2] This term was defined to include Paradiso, CapitalSource, and CapitalSource Finance.  *See* SAC, Ex. A at 1.

On July 25, 2013, following the resolution of the Loudon County Lawsuit, Flatiron and defendants CSE Mortgage and CapitalSource Commercial Loan executed a purchase agreement (the "Purchase Agreement") in which CSE Mortgage and CapitalSource Commercial Loan agreed to sell Flatiron all of their equity interest in Paradiso "free and clear of all liens, claims, security interests, options, purchase rights, charges and restrictions." *Id.* ¶ 54; Ex. F, § 4.2. CSE Mortgage and CapitalSource Commercial Loan further agreed to "convey to [Flatiron] good and valid title to the [e]quity [i]nterests, free and clear of all liens, claims, security interests, options, purchase rights and rights of third parties." *Id.* The Purchase Agreement defines equity interests as "[CapitalSource Commercial Loan]'s own[ing] 100% of the limited liability company interests of [Paradiso.]" *Id.* Ex. F, § 1.1(a). Inexplicably, the Purchase Agreement did not contain a representation regarding the absence of liens on assets owned by Paradiso—such as the ones asserted by the TVPOA—only liens on the shares to be transferred.

Also absent from the Purchase Agreement is a condition precedent that the requirements of the Settlement Agreement be satisfied before Flatiron purchased Paradiso. The Purchase Agreement contains negotiated "Conditions to Closing." *See id.*, Ex. F at 8. That section sets forth a number of express conditions precedent to Flatiron's obligation to purchase the Company; however, Flatiron did not expressly require resolution of the litigation that Flatiron knew the TVPOA had brought against the target of its acquisition, nor did it contain a condition precedent requiring the delivery of any documents necessary to satisfy the terms of the pre-existing Settlement Agreement. *See id.* Nor did the Purchase Agreement contain express contractual obligations requiring the sellers of the Company to assist Flatiron and Paradiso in their compliance with the terms of the Settlement Agreement. The inexplicable—or, at least, for here—unexplained failure by Flatiron and its counsel to include such conditions and covenants in the Purchase Agreement appear to have led to this lawsuit. Because in the period following the acquisition, according to the complaint, Paradiso—now

controlled by a new owner, and Defendants—no longer in control of Paradiso and bound by no express covenant to finalize the Settlement Agreement in the Purchase Agreement—did not act promptly to fulfill the requirements of the Settlement Agreement.

Between July 25, 2013, the date on which Flatiron closed on its purchase of Paradiso, and July 30, 2013, the date on which the Loudon County chancery court issued an order dismissing all of the TVPOA's claims against Paradiso, CapitalSource, and CapitalSource Finance with prejudice, the Hodges Firm continued to represent Paradiso—notwithstanding the transfer in ownership from Defendants to Flatiron. *Id.* ¶¶ 55, 56. Adams executed the order of dismissal on behalf of Paradiso and remained attorney of record after July 25, 2013. *Id.* ¶ 58. After the closing, Choi e-mailed Adams, Paradiso's counsel, and requested that he "handle the recording of the QCD and the partial releases of the DOT . . . as well as the assignment of the non-performing CFDS." *Id.* ¶ 71. Choi further asked Adams to send "fully executed and recorded docs." *Id.* Ex. G.

As of August 19, 2013, CapitalSource and CapitalSource Finance had not recorded the Release Documents. *Id.* ¶ 74. On December 23, 2013, Flatiron—now owner of Paradiso— executed two quitclaim deeds conveying record ownership of the TVPOA Parcels to the entity that the TVPOA had created to receive the titles. *Id.* ¶ 78; Ex. I. Adams, still serving as counsel for Paradiso, CapitalSource, and CapitalSource Finance, received those quitclaim deeds and delivered them to the TVPOA's counsel pursuant to the terms of the Settlement Agreement on or around March 19, 2014. *Id.* ¶ 80. On March 19, 2014, CapitalSource and CapitalSource Finance provided executed Release Documents to the TVPOA's attorney. *Id.* ¶ 75. However, the TVPOA rejected the Release Documents because they believed that they did not comply with the terms of the Settlement Agreement. *Id.* ¶ 81. Ultimately, Defendants never recorded the Release Documents. Instead, the TVPOA recorded the Release Documents on September 11, 2014 and September 23, 2014. *Id.* ¶¶ 81-82.

C. *The TVPOA Declares Default, Accelerates Assessment Payment, and Files Another Lawsuit*

On November 6, 2013, the TVPOA issued a notice of default, which declared CapitalSource, CapitalSource Finance, CapitalSource Commercial Loan, and Paradiso in breach of the Settlement Agreement. *Id.* ¶ 83; Ex. J. The TVPOA accelerated the Assessments due on the TVPOA Parcels and, on February 14, 2014, filed another lawsuit in Loudon County (the "Second Loudon County Lawsuit"). *Id.* ¶ 84. Five days later, Choi informed Adams of the TVPOA's filing of the Second Loudon County Lawsuit. *Id.* ¶ 85. As in the first Loudon County Lawsuit, the Hodges Firm appeared for CapitalSource, CapitalSource Finance, and Paradiso (owned by Flatiron) in the Second Loudon County Lawsuit. *Id.* ¶ 86. The TVPOA voluntarily discontinued the Second Loudon County Lawsuit on July 11, 2016.

Around May 7, 2015 the TVPOA filed another lawsuit in the chancery court for Monroe County, Tennessee against Paradiso and defendants CapitalSource and CapitalSource Finance (the "Monroe County Lawsuit"). In that suit, the TVPOA alleged that Paradiso, CapitalSource, and CapitalSource Finance had not complied with the terms of the Settlement Agreement and had failed to pay required Assessments. Mr. Adams, of the Hodges Firm, again represented Paradiso in this lawsuit; however, CapitalSource and CapitalSource Finance were represented by separate counsel. *See Id.* ¶ 92.; Ex. O, Tr. 8:18-9:7. On April 15, 2016, the TVPOA filed a motion for summary judgment against Paradiso seeking damages in the amount of $550,993.83. *Id.* ¶ 97. This amount, the TVPOA alleged, represented the total value of unpaid Assessments and other fees that accrued against Paradiso on the TVPOA Parcels that Paradiso was obligated to transfer pursuant to the Settlement Agreement. *Id.* ¶ 97. On August 8, 2016, the chancery court entered an order granting summary judgment against Paradiso. *Id.* ¶ 100. The court's order adjudicated only Paradiso's liability to the TVPOA; it did not adjudicate or make any findings as to the liabilities between Paradiso, CapitalSource, and CapitalSource Finance as to their respective obligations under the

Settlement Agreement. *Id.* ¶ 101.

On September 8, 2016, Paradiso filed an amended answer and cross-complaint against CapitalSource and CapitalSource Finance seeking damages arising from their failure to timely record the Release Documents as required under the Settlement Agreement. *Id.* ¶ 104. On January 16, 2017, the chancery court denied defendant CapitalSource and CapitalSource Finance's motion to dismiss Paradiso's cross-complaint. *Id.* ¶ 105; Ex. O. On April 3, 2017, Paradiso filed an order of non-suit of its cross complaint, which dismissed with prejudice the claims against defendants CapitalSource and CapitalSource Finance. *Id.* ¶ 108. On April 11, 2017, Paradiso and TVPOA executed a settlement agreement that resolved both the Monroe County and Loudon County litigations. *Id.* ¶ 109.

## III.     PROCEDURAL HISTORY

On October 13, 2017, Flatiron and Paradiso (together, "Plaintiffs") commenced an action in the Supreme Court of the State of New York for the County of New York against Defendants. Dkt. No 1, Ex. A. On November 16, 2017, Defendants removed the action to this Court. Dkt. No. 1. Plaintiffs filed an amended complaint on December 22, 2017. Dkt. No. 21. They submitted a second amended complaint on February 12, 2018. Dkt. No. 41. In the operative complaint, Plaintiffs assert four claims of relief. First, Plaintiffs claim that defendants CapitalSource and CapitalSource Finance breached the Settlement Agreement. SAC ¶¶ 125-35. Second, Plaintiffs assert a breach of contract claim against all Defendants, claiming that they breached the Purchase Agreement. *Id.* ¶¶ 136-46. Third, Plaintiffs claim that Defendants violated Tennessee's lien laws. *Id.* ¶¶ 147-62. Finally, Plaintiffs assert a claim of negligent misrepresentation. *Id.* ¶¶ 163-72. On March 6, 2018, Defendants filed a motion to dismiss (the "Motion to Dismiss") pursuant to Federal Rule of Civil Procedure 12(b)(6). Dkt. No. 45. Plaintiffs filed their opposition on March 20, 2018. Dkt. No. 46. Defendants submitted their reply on March 27, 2018. Dkt. No. 47.

## IV. LEGAL STANDARD

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must allege sufficient facts, taken as true, to state a plausible claim for relief." *Johnson v. Priceline.com, Inc.*, 711 F.3d 271, 275 (2d Cir. 2013) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007)). To determine plausibility, courts follow a "two-pronged approach." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "First, although a court must accept as true all of the allegations contained in a complaint, that tenet is inapplicable to legal conclusions, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (alterations and internal quotation marks omitted) (quoting *Iqbal*, 556 U.S. at 678). Second, a court determines "whether the 'well-pleaded factual allegations,' assumed to be true, 'plausibly give rise to an entitlement to relief.'" *Hayden v. Paterson*, 594 F.3d 150, 161 (2d Cir. 2010) (quoting *Iqbal*, 556 U.S. at 679). Determining whether a complaint states a plausible claim is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. The scope of what a court may consider on a motion to dismiss is limited. When deciding a motion to dismiss, "a court may consider only the complaint, any written instrument attached to the complaint as an exhibit, any statements or documents incorporated in it by reference, and any document upon which the complaint heavily relies." *In re Thelen LLP*, 736 F.3d 213, 219 (2d Cir. 2013).

## V. DISCUSSION

### A. Breach of the Settlement Agreement

Paradiso alleges that defendants CapitalSource and CapitalSource Finance breached the Settlement Agreement. *See* SAC ¶¶125-35. Paradiso argues that CapitalSource and CapitalSource Finance's failure to record the Release Documents by August 19, 2013 prevented the transfer of the TVPOA Parcels because the Release Documents were necessary to satisfy the record. *Id.* ¶ 131.

Paradiso argues that CapitalSource and CapitalSource Finance's failure to record the Release Documents as required under the Settlement Agreement constitutes a breach not only of their obligations to the TVPOA, but also to obligations it owes to Paradiso under the contract. *Id.* ¶ 133.

The Court will apply Tennessee law in adjudicating the motion to dismiss Plaintiffs' first claim. Section 9 of the Settlement Agreement provides that the agreement "shall in all respects be interpreted, enforced and governed under the laws of Tennessee." SAC Ex. A at § 9. A federal court sitting in diversity applies the choice of law rules of the state in which it sits. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941); *see also Fieger v. Pitney Bowes Credit Corp.*, 251 F.3d 386, 393 (2d Cir. 2001). "New York law is clear in cases involving a contract with an express choice-of-law provision: Absent fraud or violation of public policy, a court is to apply the law selected in the contract as long as the state selected has sufficient contacts with the transaction." *Hartford Fire Ins. Co. v. Orient Overseas Containers Lines (UK) Ltd.*, 230 F.3d 549, 556 (2d Cir. 2000). The parties cite Tennessee law in briefing whether defendants CapitalSource and CapitalSource Finance breached the Settlement Agreement. "[I]n the absence of a strong countervailing public policy, the parties to litigation may consent by their conduct to the law to be applied." *Walter E. Heller & Co. v. Video Innovations, Inc.*, 730 F.2d 50, 52 (2d Cir. 1984). Where "[t]he parties' briefs assume" that a certain body of law controls, "such implied consent is sufficient to establish choice of law." *Krumme v. WestPoint Stevens Inc.*, 238 F.3d 133, 138 (2d Cir. 2000); *accord Fed. Ins. Co. v. Marlyn Nutraceuticals, Inc.*, No. 13-cv-0137 (JS) (ARL), 2013 WL 6796162, at *3 n.7.

Under Tennessee law, a claimant asserting a breach of contract action "must prove the existence of an enforceable contract, a deficiency in the performance amounting to a breach, and damages caused by the breach." *Winters*, 354 S.W. 3d at 291. Below, the Court addresses each of these requirements in turn.

*i.* *The Settlement Agreement Created Enforceable Obligations Between Paradiso, CapitalSource, and CapitalSource Finance*

CapitalSource Finance, CapitalSource, Paradiso, and the TVPOA entered into the Settlement Agreement. SAC Ex. A at 6. The parties do not dispute whether the Settlement Agreement constitutes an enforceable contract; instead, they contest whether it creates enforceable, contractual obligations between Paradiso and defendants CapitalSource and CapitalSource Finance. Paradiso argues that the Settlement Agreement imposed obligations sufficient to sustain its breach of contract action; Defendants disagree.

Paradiso contends that the Settlement Agreement created a mutuality of promises such that CapitalSource and CapitalSource Finance's obligations flowed not only to the TVPOA, but also to Paradiso. SAC ¶¶ 133-35; Dkt. No. 46 ("Plaintiffs' Opposition") at 7. In support of this claim, Plaintiffs point to language contained in Section 19 of Settlement Agreement. Section 19 provides, in relevant part, that "[t]he terms of this Agreement and the obligations hereunder shall be binding upon each signatory *jointly and severally*." SAC Ex. A, § 19 (italics added). Paradiso contends that, pursuant to Section 19, CapitalSource, CapitalSource Finance, and Paradiso, as signatories to the Settlement Agreement, were jointly and severally obligated to promptly record the Release Documents. This shared obligation, Paradiso argues, creates contractual obligations sufficient to support its breach of contract action. *Id.* ¶ 127. Plaintiffs also cite the following language from Section 19 in support of their argument: "[n]either the failure of any party to exercise any power given such [p]arty hereunder or to insist upon strict compliance by any other party with its obligations hereunder . . . shall constitute a waiver of any [p]arty's right to demand exact compliance with the terms hereof." SAC ¶¶ 63-64; Ex. A, § 19; *see also* Plaintiffs' Opposition at 7.[3]

---

[3] In their opposition to Defendants' Motion to Dismiss, Plaintiffs selectively quote from this sentence in Section 19 of the Settlement Agreement. Specifically, Plaintiffs write, "the . . . Settlement Agreement creates joint and several obligations between all parties and provides that each party had the right "*to demand exact compliance with the terms [thereof]*."

Defendants argue that the TVPOA is the only party that can assert a breach of contract action against them. They present two arguments in support of their position. First, Defendants contend that the Settlement Agreement did not create mutual obligations between them and Plaintiffs because mutual consideration did not exist between them. Defendants' Memorandum at 8-9. Specifically, Defendants contend that the Settlement Agreement represents a valid contract between Paradiso and the TVPOA and, separately, between CapitalSource, CapitalSource Finance, and the TVPOA. *Id.* at 9. They ground this claim in the first paragraph of the Settlement Agreement, which provides that the Settlement Agreement "is made and entered into . . . by and between [Paradiso, CapitalSource, and CapitalSource Finance] (hereinafter referred to . . . as the "Defendants") . . . and [the TVPOA] ('Plaintiff')." *Id.* Ex. A at 1. The Settlement Agreement, Defendants assert, is devoid of obligations or promises between "Plaintiff" and "Defendants" as defined in the Settlement Agreement. Defendants' Memorandum at 9. Because Paradiso, CapitalSource, and CapitalSource Finance's respective obligations were owed only to the TVPOA, Defendants argue that only the TVPOA can assert a breach of contract claim for any alleged breach of the Settlement Agreement.

Defendants next argue that reading Section 19 of the Settlement Agreement to impose mutual obligations on all signatories, as Plaintiffs ask of the Court, "would have absurd consequences." Dkt. No. 47, Defendants' Reply Memorandum of Law ("Defendants' Reply") at 2. Defendants claim that, under Plaintiffs' interpretation of the Settlement Agreement, TVPOA—as a signatory—would be jointly responsible for each of CapitalSource, CapitalSource Finance, and

(italics added). Plaintiffs' Opposition at 7 (quoting SAC Ex. A, § 19). As the plain language of the entirety of this sentence makes clear, the provision of Section 19 that Plaintiffs rely on does not create a blanket right for any party to demand exact compliance with the Settlement Agreement. To the contrary, the provision states that a party does not waive any right the party had under the contract to demand exact compliance with the terms of the Settlement Agreement simply because the party either did not exercise a power given by the Settlement Agreement or because it failed to insist that another party strictly comply with its obligations under the Settlement Agreement.

Paradiso's obligations.  Defendants' Reply at 3.  This, Defendants argue, is not a reasonable construction of the Settlement Agreement.  *Id.*

Resolving this disagreement between the parties requires the Court to interpret the Settlement Agreement.  When interpreting a contract under Tennessee law, "the written words are the lodestar of contract interpretation, and Tennessee courts have rejected firmly any notion that a court may disregard the written text and make a new contract for the parties under the guise of interpretation."  *Individual Healthcare Specialists, Inc. v. BlueCross BlueShield of Tennessee, Inc.*, No. M2015-02524-SC-R11-CV, 2019 WL 256716 at *1.  "If the contract language is found to be clear and unambiguous, the contract language is interpreted according to its plain terms and ordinary meaning."  *Maggart v. Almany Realtors, Inc.*, 259 S.W.3d 700, 704 (Tenn. 2008).  A contract is ambiguous when it is susceptible to two or more reasonable constructions.  *Fisher v. Revell*, 343 S.W.3d 776, 781 (Tenn. Ct. App. 2009).  However, "[t]he fact that one party may have intended different results . . . is insufficient to construe a contract at variance with its plain and unambiguous terms."  *Bourland, Heflin, Alvarez, Minor, and Matthews, PLC v. Heaton*, 393 S.W.3d 671, 676 (Tenn. Ct. App. 2012).

After reviewing the language of the Settlement Agreement, the Court agrees with Plaintiffs that it creates an enforceable obligation between Paradiso, CapitalSource, and CapitalSource Finance, but not on the basis that Paradiso presents.  The paragraph preceding Section 1 of the Settlement Agreement states, "the *Parties* agree as follows."  SAC Ex. A at 1 (italics added).  In the Settlement Agreement, Paradiso, CapitalSource, CapitalSource Finance, and the TVPOA are defined as the "Parties."  *Id.*  Furthermore, Section 1(ii) provides that "*Defendants* or their affiliates, successors or assigns as applicable, shall promptly record releases of all Deeds of Trust, Security Agreements, Fixture Filings, Assignments of Rents and Leases, and amendments thereto, or similar security instruments of record . . . ."  *Id.* (emphasis added).  The Settlement Agreement defines

"Defendants" to include Paradiso, CapitalSource and CapitalSource Finance. *Id.*

Interpreting these provisions of the Settlement Agreement under their plain terms and ordinary meaning, the Court cannot find, as Defendants argue, that the obligations flowed exclusively between the TVPOA and Paradiso on one side and the TVPOA, CapitalSource, and CapitalSource Finance on the other. All parties to the contract agreed that CapitalSource, CapitalSource Finance, and Paradiso would share the duty to record the Release Documents. Because all "Defendants" were responsible to record the Release Documents, this shared obligation created duties between Paradiso, CapitalSource, and CapitalSource Finance that supports Paradiso's breach of contract claim.

    ii.    *The Court Cannot Determine at this Stage Whether Paradiso Materially Breached the Settlement Agreement*

Even if a mutual obligation between Paradiso, CapitalSource, and CapitalSource Finance existed under the Settlement Agreement, Defendants argue that Paradiso may not assert a breach of contract claim because it breached the Settlement Agreement. *See* Defendants' Memorandum at 9-10. Under Tennessee law, a party who has materially breached a contract is not entitled to damages stemming from the other party's later material breach of the same contract. *McClain v. Kimbrough Const. Co.,* 806 S.W.2d 194, 199 (Tenn. App. 1990); *see also Carter v. Krueger*, 916 S.W.2d 932, 934 (Tenn. Ct. App. 1995); *Santa Barbara Capital Corp. v. World Christian Radio Found. Inc.*, 491 S.W.2d 852, 857 (Tenn. Ct. App. 1972). Therefore, "in cases where both parties have not fully performed, it is necessary for the courts to determine which party is chargeable with the first uncured material breach." *Hogan v. DiCicco*, 1991 WL 139719, at *4 (Tenn. Ct. App. July 31, 1991).

Tennessee courts have applied several different tests to determine the materiality of a parties' breach. *See* 22 Steven W. Feldman, *Tennessee Practice: Contract Law and Practice* § 11:13 (2006) (discussing cases). The clear trend in Tennessee is to apply the test found in section 241 of the

Restatement (Second) of Contracts. *See, e.g.*, *State v. Howington*, 907 S.W.2d 403, 410–411 (Tenn. 1995); *DePasquale v. Chamberlain*, 282 S.W.3d 47, 53–54 (Tenn. Ct. App. 2008); *Adams TV of Memphis, Inc. v. ComCorp of Tenn., Inc.*, 969 S.W.2d 917, 921 (Tenn. Ct. App. 1997). The factors found in the Restatement (Second) are:

> (a) the extent to which the injured party will be deprived of the benefit which he reasonably expected;
> (b) the extent to which the injured party can be adequately compensated for the part of that benefit of which he will be deprived;
> (c) the extent to which the party failing to perform or to offer to perform will suffer forfeiture;
> (d) the likelihood that the party failing to perform or to offer to perform will cure his failure, taking account of all the circumstances including any reasonable assurances;
> (e) the extent to which the behavior of the party failing to perform or to offer to perform comports with standards of good faith and fair dealing.

*Madden Phillips Const., Inc. v. GGAT Dev. Corp.*, 315 S.W.3d 800, 822–23 (Tenn. Ct. App. 2009) (quoting Restatement (Second) of Contracts § 241 (1981)).

The following provisions of the Settlement Agreement describe the obligations with respect to the quitclaim deeds: (i) "[Paradiso] shall convey the parcels . . . to Plaintiff or its designees by quitclaim deed"; (ii) "[t]he quitclaim deed and the Release Documents shall be recorded on or before August 19, 2013"; and (iii) "[w]ithin a reasonable time after closing, not later than August 19, 2013, [Paradiso] shall deliver the assignment of the contract for deed rights corresponding to the properties." SAC Ex. A, §§ 1(i),3. Under the Settlement Agreement, "Defendants"—defined as Paradiso, CapitalSource, and CapitalSource Finance—had the obligation to record the Release Documents before August 19, 2013. *Id.* § 3.

Defendants contend that Paradiso's failure to convey the quitclaim deeds in accordance with the Settlement Agreement's terms precludes it from asserting its breach of contract claim. While Section 1 does not articulate a date by which Paradiso had to convey the quitclaim deeds, Defendants argue that Section 3's requirement that the deeds be *recorded* before August 19, 2013

required Paradiso to *convey* the deeds before this date. *See* Defendants' Memorandum at 9-10.

Plaintiffs do not represent that Paradiso conveyed the quitclaim deeds by August 19, 2013. *See, e.g.*,

SAC ¶ 78 ("On December 23, 2013, at the request of, and as a courtesy to the CapSource

Defendants, Flatiron caused [Paradiso] to execute two [q]uitclaim [d]eeds conveying the record

ownership of the TVPOA Parcels to the entity created by the TVPOA to take title to the TVPOA

Parcels."); *Id.* ¶ 80 ("The [q]uitclaim [d]eeds were delivered to Adams (counsel for Paradiso,

CapitalSource, and CapitalSource Finance), and Adams delivered them to Counsel for TVPOA,

pursuant to the Settlement Agreement, no later than March 19, 2014."). Plaintiffs argue that the

Settlement Agreement did not require Paradiso to convey or record the quitclaim deeds by a

particular date, but, instead, only obligated Paradiso to deliver them to the TVPOA. Plaintiffs'

Opposition at 10. Defendants argue, in response, that even if the Court credits Plaintiffs' argument

that the TVPOA had the responsibility to record the quitclaim deeds, Paradiso's delivery of the

deeds in March 2014 precluded such recording by August 19, 2013, as required under the Settlement

Agreement. *See* SAC ¶ 80 (Plaintiffs explain delivery of the quitclaim deeds on March 19, 2014).

Because Paradiso breached the Settlement Agreement, Defendants argue, Plaintiffs cannot maintain

their breach of contract action.

For their part, Plaintiffs contend that Defendants breached their obligations under the

Settlement Agreement because they failed to record the Release Documents by August 19, 2013.

*See, e.g.*, SAC ¶¶ 60, 75. Defendants concede this fact. *See* Defendants' Memorandum at 10 ("[B]oth

parties failed to meet their . . . obligations by August 19, 2013"). As explained above, under

Tennessee law, in scenarios in which both parties have not performed, the court must determine

which party is chargeable with the first uncured material breach. *McClain*, 806 S.W.2d at 199.

At this stage, the Court can neither determine whether the parties' breaches were material

nor whether it was Paradiso, CapitalSource, or CapitalSource Finance that first breached. Under

Tennessee law, whether a breach is material is a fact-laden inquiry that is not typically decided on a motion to dismiss. *See, e.g.*, *Forrest Const. Co., LLC v. Laughlin*, 337 S.W.3d 211, 219 (Tenn. Ct. App. 2009) (reviewing trial court decision regarding whether breach was material and which party breached first that was reached after multi-day trial); *Madden Phillips Const., Inc. v. GGAT Development Corp.*, 315 S.W.3d 800 (Tenn. Ct. App. 2009) (same); *DePasquale v. Chamberlain*, 282 S.W.3d 47 (Tenn. Ct. App. 2008) (same). The Court cannot conclude as a matter of law on a motion to dismiss that Paradiso breached the Settlement Agreement, that the alleged breach was material, and that Paradiso—as opposed to CapitalSource or CapitalSource Finance—committed the first material breach. As a result, the Court declines Defendants' invitation to dismiss Plaintiffs' breach of contract action on the grounds that Paradiso breached the underlying agreement. *See Roganti v. Metropolitan Life Ins. Co.*, No. 12 CIV. 0161 PAE, 2012 WL 2324476, at *7 (S.D.N.Y. June 18, 2012) (declining to decide disputed factual issues on motion to dismiss).

    *iii.    Plaintiffs Have Plausibly Alleged that Defendants' Supposed Breach Caused Them to Suffer Damages*

A plaintiff asserting a breach of contract claim under Tennessee law must plead causation; that is, a plaintiff must allege that the defendant's breach of the contract caused the plaintiff to suffer damages. *See BancorpSouth Bank, Inc. v. Hatchel*, 223 S.W.3d 223, 227 (Tenn. Ct. App. 2006). A court can decide whether a party has plausibly alleged causation on a motion to dismiss. *See, e.g.*, *Advanced Sec. Servs. Evaluation & Training, LLC v. OHR Partners Ltd.*, No. M201700249COAR3CV, 2018 WL 1391626, at *11 (Tenn. Ct. App. Mar. 20, 2018) (affirming trial court's denial of defendant's motion to dismiss plaintiff's breach of contract claim where trial court found that plaintiff adequately plead causation). Furthermore, Tennessee law allows the courts to "award all damages which are the normal and foreseeable result of a breach of contract." *Morrow v. Jones*, 165 S.W.3d 254, 259 (Tenn. Ct. App. 2004).

In their complaint, Plaintiffs allege that "[d]efendants CapitalSource and CapitalSource

Finance's failure to timely provide and record properly executed Release Documents constituted a breach of their joint and several obligations to Paradiso resulting in delay and damages to Paradiso." SAC ¶ 133. Plaintiffs contend that CapitalSource and CapitalSource Finance's failure to record the Release Documents caused the TVPOA to declare CapitalSource, CapitalSource Finance, and Paradiso to be in default of the Settlement Agreement, which eventually resulted in the order granting summary judgment against Paradiso. Plaintiffs' Opposition at 11. The notice of default declared the parties in violation of the Settlement Agreement because of "[Paradiso] and [CapitalSource Finance's] failure to deliver the required deeds, assignments, and release documents by the August 19, 2013 deadline." SAC Ex. J ("Notice of Default") at 2. The Notice of Default further found the Settlement Agreement breached because the Assessments required under the Declaration were delinquent and past due. *Id.* at 1-2.

In resolving the Monroe County Lawsuit, the chancery court for Monroe County issued an order granting the TVPOA's motion for summary judgment against Paradiso. *See* SAC Ex. M. The Monroe County chancery court found Paradiso "in default of its obligations to TVPOA relative to the [TVPOA Parcels] by failing to pay assessments, fees and charges authorized and required by the Declaration." *Id.* ¶ 36. The chancery court further declared that Paradiso was "liable to TVPOA for the sum of delinquent assessments attributable to the [TVPOA Parcels] that arose between August 19, 2013 through the end of 2014 as a matter of law." *Id.* ¶ 36. The Declaration obligated only Paradiso to pay Assessments; Plaintiffs do not contend that Defendants had any duty to pay them.

Plaintiffs argue that if Defendants had recorded the Release Documents by the deadline, the TVPOA Parcels would have been transferred from Paradiso's ownership and Paradiso would not have been responsible for the Assessments. *See* Plaintiffs' Opposition at 12.

"The purpose of assessing damages in a breach of contract suit is to place the plaintiff, as nearly as possible, in the same position he would have had if the contract had been performed."

*BancorpSouth Bank, Inc.*, 223 S.W.3d at 228. If Defendants had recorded the Release Documents, it is plausible that Paradiso would have relinquished its ownership of the TVPOA Parcels and, as a result, the TVPOA would not have sued them for failing to pay the Assessments. The damages that Plaintiffs allege reflect a foreseeable consequence of the Defendants' failure to record the Release Documents. The TVPOA sued Defendants, while owning Paradiso, for failing to pay the Assessments. SAC ¶ 45. The Defendants were clearly aware of the obligations the Declaration imposed and Flatiron expressed interest in acquiring Paradiso after learning of this litigation. SAC ¶ 44. As signatories to the Settlement Agreement resolving this litigation, the parties entered into an agreement that sought to transfer the ownership of the TVPOA Parcels—and with it the obligation to pay the Assessments required under the Declaration—from Paradiso. *Id.* Ex. A, § 1. It was foreseeable, therefore, that the Defendants' failure to record the Release Documents would result in Paradiso's continued ownership of the TVPOA Parcels and the concomitant obligations under the Declaration. It, too, is plausible that, as Plaintiffs claim, the chancery court for Monroe County would not have imposed the summary judgment order for unpaid assessments against Paradiso if the Defendants had recorded the Release Documents and effectuated the transfer of the TVPOA Parcels. The Court concludes, therefore, that Plaintiffs have adequately pleaded damages.[4]

> iv. *Collateral Estoppel Does Not Bar Plaintiffs' Claim*

As their final argument, Defendants contend that the doctrine of collateral estoppel prevents

---

[4] While Plaintiffs have plausibly alleged that Defendants' failure to record the Release Documents caused them to suffer some damages, the Court pauses to observe that any recovery for this claim may be limited. The parties entered into the Settlement Agreement on July 19, 2013 and signed the Purchase Agreement on July 25, 2013. There was only a six-day window during which Defendants owned Paradiso and did not record the Release Documents. Flatiron acquired Paradiso on July 25, 2013. Paradiso did not record the Release Documents thereafter. *See* SAC Ex. A. at § 1. Given that Paradiso—controlled by Flatiron—had a coequal obligation to record the documents for most of the time period at issue here, the extent of its recoverable damages is an open question. The Court holds only that Plaintiffs have sufficiently pleaded damages to maintain the cause of action; it takes no position now on the extent of any possible recovery, and, in particular, whether, and to what extent, Paradiso or Flatiron can claim damages as a result of Defendants' failure to take any action during the period following the closing of the acquisition given Paradiso's joint and several obligation to satisfy "Defendants'" obligation to record the Release Documents.

Plaintiffs from relitigating this claim. *See* Plaintiffs' Memorandum at 13. Because the chancery court of Monroe County found that Paradiso was liable to the TVPOA for unpaid Assessments, Defendants argue that Plaintiffs cannot bring their breach of contract action before this Court. *Id.* This argument fails. Federal courts apply the collateral estoppel rules of the state that rendered the prior judgment. *See LaFleur v. Whitman*, 300 F.3d 256, 271 (2d Cir. 2002). Under Tennessee law, the doctrine of collateral estoppel bars "the same parties or their privies from relitigating in a later proceeding legal or factual issues that were actually raised and necessarily determined in an earlier proceeding." *Mullins v. State*, 294 S.W.3d 529, 534 (Tenn. 2009). To prevail on a claim of collateral estoppel, a party must establish:

> (1) that the issue to be precluded is identical to an issue decided in an earlier proceeding, (2) that the issue to be precluded was actually raised, litigated, and decided on the merits in the earlier proceeding, (3) that the judgment in the earlier proceeding has become final, (4) that the party against whom collateral estoppel is asserted was a party or is in privity with a party to the earlier proceeding, and (5) that the party against whom collateral estoppel is asserted had a full and fair opportunity in the earlier proceeding to contest the issue now sought to be precluded.

*Bowen ex rel. Doe v. Arnold*, 502 S.W.3d 102, 107 (Tenn. 2016). Here, the Court need not move beyond the first requirement. The chancery court of Monroe County decided a motion for summary judgment that the TVPOA made exclusively against Paradiso. *See* SAC Ex. M. Neither CapitalSource nor CapitalSource Finance was included in the motion. Paradiso later filed a motion to amend the judgment to impose shared liability with CapitalSource and CapitalSource Finance. *See* SAC Ex. O. The chancery court denied this motion on the grounds that "there was no motion versus the other two defendants." *Id.* at 16. The Court cannot find, therefore, that the chancery court considered the issue that Plaintiffs now raise—namely, whether Defendants' failure to record the Release Documents caused Paradiso to suffer damages. Therefore, the doctrine of collateral estoppel does not bar plaintiffs from raising that issue before this Court.

Accordingly, Defendants' motion to dismiss Plaintiffs' claim for breach of the Settlement Agreement is DENIED.

### B. The Court Cannot Determine that Flatiron Lacked Capacity to Sue When it Commenced this Action

As a company organized pursuant to the laws of Delaware, Delaware law governs Flatiron's capacity to sue. *See* Fed. R. Civ. P. 17(b)(3); N.Y. Ltd. Liab. Co. Law. 801(a) (McKinney 2018); *see also Lyman Commerce Sols., Inc. v. Lung*, No. 12-CV-4398, 2013 WL 4734898, at *5 (S.D.N.Y Aug. 30, 2013). Delaware law requires a certificate of cancellation to be filed upon the dissolution and the completion of winding up of a limited liability company. *See* 6 Del. C. § 18-203(b). Once a certificate of cancellation has been filed, a LLC lacks capacity to sue or be sued. *See id.* § 18-803(b); *Metro Commc'n Corp. BVI v. Advanced Mobilecomm Techs. Inc.*, 854 A.2d 121, 138 (Del. Ch. 2004) ("18-803(b) of the LLC Act provides that suit generally may be brought by or against a limited liability company only until the certificate of cancellation is filed.")

On May 10, 2016, Flatiron filed a certificate of cancellation with the Delaware's secretary of state. Dkt. No. 44, Ex. D. Defendants argue, therefore, that Flatiron cannot maintain this lawsuit because the certificate of cancellation stripped it of its capacity to sue when it filed its complaint. See Defendants' Memorandum at 14-15. Plaintiffs note that they filled a certificate of correction on November 11, 2017 pursuant to 6 Del. C. § 18-211(a). Plaintiffs argue, therefore, that the certificate of correction applied retroactively and gave them capacity to sue. Section 18-211(a) provides:

> [w]henever any certificate authorized to be filed with the office of the Secretary of State under any provision of this chapter has been so filed and is an inaccurate record of the action therein referred to, or was defectively or erroneously executed, such certificate may be corrected by filing with the office of the Secretary of State a certificate of correction of such certificate.

The key provision, however, to resolve this issue is § 18-203(b). Section 18-203(b) states:

> [a] certificate of cancellation that is filed in the office of the Secretary of State *prior to the dissolution or the completion of winding* up of a limited liability company may be corrected . . . by filing with the office of the Secretary of State a certificate of correction . . . in accordance with § 18-211 of this title. (italics added).

Under § 18-203(b), therefore, a company may file a certificate of correction that nullifies a previously-filed certificate of cancellation so long as the LLC has not finished the winding up process. The facts asserted in the complaint do not allow the Court to find that Flatiron had completed the dissolution process such that the filing of the certificate of correction did not nullify the effect of the certificate of cancellation. Accordingly, the Court cannot conclude at the motion to dismiss stage, as Defendants argue, that Flatiron lacked capacity to sue at the time that it commenced this action.

### C. Breach of the Purchase Agreement

Plaintiffs next argue that Defendants violated Section 9.4 of the Purchase Agreement. Plaintiffs contend that Section 9.4 of the Purchase Agreement, entitled "Right to Defend," created an obligation requiring Defendants to defend Plaintiffs against "any claims subject to the indemnification provisions of the purchase agreement." SAC ¶ 137. Plaintiffs contend that Defendants "undertook to tender a defense" with respect to the litigations involving the TVPOA because their counsel—the Hodges Firm—represented Paradiso in these matters. *Id.* ¶ 138. Plaintiffs claim that Defendants' "tendering the defense under Article 9.4 of the Purchase Agreement to the claims asserted in the Tennessee litigations constitute[d] an admission that the claims asserted in those actions were indemnified claims as defined in Articles 4.2 and 9.1 of the Purchase Agreement." *Id.* Because Plaintiffs' argument relies on an obligation that the Purchase Agreement does not create, the breach of contract claim fails.

The Court will apply New York law in adjudicating the motion to dismiss Plaintiffs' second claim. Section 10.9 of the Purchase Agreement provides that the agreement "shall be governed by and construed in accordance with the laws of the State of New York, without regard to the conflicts

of laws principles thereof." SAC Ex. A, § 10.9. A federal court sitting in diversity applies the choice of law rules of the state in which it sits. *Klaxon Co.*, 313 U.S. at 496; *see also Fieger*, 251 F.3d at 393. And, as previously noted, in New York "[a]bsent fraud or violation of public policy, a court is to apply the law selected in the contract as long as the state selected has sufficient contacts with the transaction." *Hartford Fire Ins. Co.*, 230 F.3d at 556.

    i.    *Flatiron Cannot Assert Breach of the Purchase Agreement Against CapitalSource and CapitalSource Finance*

       As an initial matter, Flatiron cannot assert its breach of the purchase agreement claim against CapitalSource and CapitalSource Finance because they are not parties to the agreement. Generally, "[t]here can be no breach of contract claim against a non-signatory to the contract." *Randall's Island Aquatic Leisure, LLC v. City of New York,* 92 A.D.3d 463 (1st Dep't 2012). In response, Plaintiffs contend that, under New York law, "a non-signatory can be sued for breach of contract when 'a non-signatory is found to have manifested an intent to be bound by the contract.'" Plaintiffs' Opposition at 15 (quoting *MBIA Ins. Corp. v. Royal Bank of Canada*, 706 F. Supp. 2d 380, 396 (S.D.N.Y. 2009)). Plaintiffs are correct that even if a party does not sign a written agreement, it will be bound if the totality of its expressed words and deeds manifests an intent to be bound. *See Rus, Inc.* v. *Bay Indus. Inc.*, No. 01 CIV. 6133 (GEL), 2004 WL 1240578. The Court can determine whether a party intended to be bound by a contract on a motion to dismiss. *See, e.g., Kolchins v. Evolution Markets, Inc.*, 31 N.Y.3d 100, 108 (2018).

       The court in *Horsehead Indus., Inc. v. Metallgesellschaft AG* explained that an entity can manifest an intent to be bound by a contract that it did not sign if it directly participated in the negotiation of the contract or if the entity is the parent of a subsidiary that signed the contract and controls the subsidiary for its own purposes. 239 A.D.2d 171, 172 (1st Dep't 1997). Here, Plaintiffs have neither alleged that CapitalSource or CapitalSource Finance directly participated in the negotiations of the

Purchase Agreement nor that either entity is a parent that controlled a subsidiary that signed the

Purchase Agreement. Accordingly, because CapitalSource and CapitalSource Finance are not

signatories to the Purchase Agreement and, furthermore, because Plaintiffs have not alleged that

they manifested an intent to be bound by the Purchase Agreement, Flatiron cannot assert this claim

against CapitalSource and CapitalSource Finance.

ii.    *Section 9.4 Does Not Create a Duty to Defend*

Plaintiffs' breach of contract claim alleges the breach of a duty that the Purchase Agreement

does not create. Section 9.4 provides:

> **9.4 Right to Defend.** Upon receipt of any suit, action, investigation,
> claim, or proceeding for which indemnification might be claimed by
> an Indemnified Party, the Indemnifying Party shall be entitled to
> defend, contest or otherwise protect against any such suit, action,
> investigation, claim, or proceeding at its own cost and expense. The
> Seller [Paradiso, CSE Mortgage LLC, and CapitalSource Commercial
> Loan] as indemnifying Party, shall have the right to settle any such suit,
> action, investigation, claim or proceeding at its own cost and expense
> up to the applicable indemnification cap set forth in Section 9.6(d) or
> to pay, in full satisfaction of its obligations under this Article 9, to the
> Indemnified Party, the difference between the Buyer Losses and the
> Seller has previously paid pursuant to this Article 9 and the applicable
> indemnification cap set forth in section 9.6(d).

*Id.* "Because contract interpretation is generally a question of law, it is suitable for disposition on

a motion to dismiss." *Am. Auto. Ins. Co. v. Rest Assured Alarm Sys., Inc.,* 786 F.Supp.2d 798, 803

(S.D.N.Y. 2011). Concomitantly, "[t]he matter of whether the contract is ambiguous is a question of

law for the court." *Law Debenture Trust Co. of New York v. Maverick Tube Corp.,* 595 F.3d 458, 465 (2d

Cir. 2010). *Hexagon Sec. LLC v. Leawood Bancshares, Inc.,* No. 13 CIV. 907 JSR, 2014 WL 1303516, at

*2 (S.D.N.Y. Mar. 14, 2014).

Here, a plain reading of Section 9.4 evinces the shortcomings of Plaintiffs' argument. To

begin, as mentioned above, the section is entitled "Right to Defend," not duty to defend. SAC Ex.

F at 13. Second, Section 9.4's language makes clear that the "Right to Defend" provision permitted

CSE Mortgage and CapitalSource Commercial Loan to control the defense of any claim for which they might be responsible to indemnify Flatiron, the buying party. Section 9.4 further provides, "[i]f the [i]ndemnifying [p]arty undertakes the defense of such matter, the [i]ndemnified [p]arty shall not, so long as the [i]ndemnifying party does not abandon the defense thereof, be entitled to recover from the [i]ndemnifying [p]arty any legal or other expenses subsequently incurred . . ." *Id.* This clause, which explicitly anticipates that the indemnifying party may abandon any defense that it elects to take on, makes clear that Section 9.4 creates a discretionary right to defend, not a duty as Plaintiffs contend.

Under New York law, where there is no contractual obligation between two parties, there can be no breach of contract claim. *See Fleissler v. Bayroff*, 266 A.D.2d 34, 34-46 (1998); *see also Davantzis v. PaineWebber Inc.*, No. 20032/2000, 2001 WL 1423519, at *3 (N.Y. Sup. Ct. July 23, 2001) ("It is axiomatic that where there is no contractual obligation between two parties or when the essential elements of the contract are not specified, there can be no breach of contract claim."). Because Plaintiffs' breach of contract claim is premised on a contractual obligation that does not exist in the underlying agreement, it fails. *See, e.g., Ross v. FSG PrivatAir, Inc.*, No. 03 CIV. 7292 (NRB), 2004 WL 1837366, at *3-*5, *8 (S.D.N.Y. Aug. 17, 2004) (dismissing plaintiff's breach of contract claim after determining that he alleged that defendants breached obligations that did not actually exist under the terms of the contract). Accordingly, Defendants' motion to dismiss Plaintiffs' claim for breach of the Purchase Agreement is GRANTED. The dismissal is without leave to replead the claim because any attempt to replead on this basis would be futile. *See Advanced Magnetics, Inc. v. Bayfront Partners, Inc.,* 106 F.3d 11, 18 (2d Cir. 1997) (noting that leave to amend need not be granted where the proposed amendment would be futile).

### D. Violation of Tennessee Lien Law

As its third claim for relief, Plaintiffs allege that Defendants violated Tennessee Code Ann.

§ 66-25-101(a) ("§ 66-25-101(a)").  Under § 66-25-101(a):

> When a debt secured by a mortgage, deed of trust, or by lien retained
> in a deed of conveyance of land or bill of sale, or other instrument, has
> been fully paid or satisfied, the mortgagee, transferee, or assignee of
> the mortgagee or the legal holder of the debt secured by deed of trust
> or lien, who has received payment or satisfaction of the debt must
> satisfy the record by a formal deed of release.

The Court makes short work of Plaintiffs' argument under § 66-25-101(a).[5]  To begin,

Plaintiffs' complaint is devoid of any allegation that Paradiso had a loan or other debt with any of

the Defendants.  *See* SAC ¶¶ 147-162.  Plaintiffs argue that they did not have to have a debt with

Defendants to state a claim under § 66-25-101(a) because "the application of the statute is not

limited to a mortgagee-mortgagor relationship."  Plaintiffs' Opposition at 23.  In support of this

argument, Plaintiffs cite Tennessee Code Ann. § 66-25-102 ("§ 66-25-102").  *Id.*  Section § 66-25-102

provides:

> If the holder of any debt secured by real property situated in this state
> fails to enter a proper release of record after having been fully paid or
> satisfied within forty-five (45) days from the receipt of a written
> request from the party making such payment, including, but not limited
> to, the maker, the mortgagor, the purchaser of the property covered
> by such instrument or any closing agent or attorney who has collected
> and transmitted funds for such payment, the holder of the debt shall
> forfeit to the party making such request the sum of one hundred
> dollars.

As the language makes clear, § 66-25-102 permits parties outside of the mortgagor-

mortgagee relationship to state claims under the statute if, following full payment or satisfaction of

the debt, the holder of the debt fails to record releases within forty-five days of receiving the party's

written request that the debt-holder do so.  Therefore, § 66-25-102 does not support Plaintiffs'

---

[5] Plaintiffs argues that § 66-25-101(a) creates a private right of action; however, the Court does not reach the question in resolving this claim.

argument that a party need not hold a debt to assert a claim under § 66-25-101(a).

Accordingly, Plaintiffs fail to plausibly allege that § 66-25-101(a) applies to this case. Therefore, this claim too fails. *See also United American Bank of Memphis v. Gardner*, 706 S.W.2d 639, 643 (Tenn. Ct. App. 1985) (explaining that § 66-25-101(a) requires not only the existence of debt between parties, but also that "only full payment or satisfaction [of the debt] triggers the statute."). Defendants' motion to dismiss Plaintiffs' claim for violation of § 66-25-101(a) is GRANTED. The Court grants Plaintiffs leave to replead this claim. *See Cruz v. TD Bank, N.A.*, 742 F.3d 520, 523 (2d Cir. 2013) ("[I]t is the usual practice upon granting a motion to dismiss to allow leave to replead.").

### E. Negligent Misrepresentation

Plaintiffs assert negligent misrepresentation as their final claim of relief. *See* SAC ¶¶ 163-172. Plaintiffs contend that Defendants negligently misrepresented obligations deriving from both the Settlement Agreement and the Purchase Agreement. Their theory of liability with respect to the Settlement Agreement is as follows. Under the Settlement Agreement, only Defendants were obligated to record the Release Documents. *Id.* ¶ 165. Plaintiffs contend that Defendants assured Plaintiffs that they would record the Release Documents, but ultimately never did so. *Id.* ¶¶ 76, 166; Exs. G, R, S.

Plaintiffs also claim that Defendants made negligent misrepresentations with respect to their obligations under the Purchase Agreement. According to Plaintiffs, Defendants represented that they would "defend against TVPOA's litigations, negotiate additional agreements and . . . remediate or resolve the issues surrounding the TVPOA Parcels subsequent to the execution of the Settlement Agreement."[6] *Id.* ¶ 167. Although Plaintiffs contend that they relied on both of these representations, they claim that Defendants failed to deliver, which "result[ed] in accruing and

---

[6] The Court has already explained how the plain language of the Purchase Agreement makes clear that a "duty to defend" did not exist under the terms of this agreement. *See* Section IV.A.(i) above.

continuing damages to Plaintiffs." *Id.* ¶ 168.

The parties dispute which law governs this claim. In their opening motion, Defendants argue that New York law governs. *See* Defendants' Memorandum at 19. Plaintiffs contend that Tennessee law applies. *See* Plaintiffs' Opposition at 19. In their reply, Defendants appear to shift their focus and argue that Plaintiffs' negligent misrepresentation claim fails under Tennessee law. As explained below, the Court concludes that Tennessee law governs. Because, as Defendants argue, Plaintiffs' complaint fails to satisfy Rule 9(b)'s heightened pleading standard with respect to the negligent misrepresentation claim, the Court begins and ends its analysis there.

### i. *Tennessee Law Governs*

The parties dispute which law governs Plaintiffs' negligent misrepresentation claim. Plaintiffs contend that Tennessee law controls the negligent misrepresentation claims deriving from both the Settlement Agreement and the Purchase Agreement because, under New York's interests analysis, Tennessee "has the most significant interest in, or relationship to the dispute." Plaintiffs' Opposition at 19 (quoting *White Plains Coat & Apron Co. Inc. v. Cintas Corp.*, 460 F.3d 281, 283 (2d Cir. 2006)). For their part, Defendants argue that New York law applies. Plaintiffs are correct.

The scope of a contract's choice of law provision is a question governed by New York law. *See McBeth v. Porges*, 171 F. Supp. 3d 216, 224 (S.D.N.Y. 2016). The Second Circuit has observed "a reluctance on the part of New York courts to construe contractual choice-of-law clauses broadly to encompass extra-contractual causes of action." *Fin. One Pub. Co. v. Lehman Bros. Special Fin., Inc.*, 414 F.3d 325, 334 (2d Cir. 2005). Under New York law, "tort claims are outside the scope of contractual choice-of-law provisions that specify what law governs the construction of the terms of the contract." *Id.* at 335. A claim for negligent misrepresentation sounds in tort under New York law. *See Fab Industries, Inc. v. BNY Fin. Corp.*, 252 A.D.2d 367 (1st Dep't 1998). Furthermore, "in order for a choice-of-law provision to apply to claims for tort arising incident to the contract, the express

language of the provision must be sufficiently broad as to encompass the entire relationship between the contracting parties." *Krock v. Lipsay*, 97 F.3d 640, 645 (2d Cir. 1996) (internal quotation marks omitted). Section 9 of the Settlement Agreement states "[t]his Agreement is made and entered into in the State of Tennessee and the Parties agree that it shall in all respects be interpreted, enforced, and governed under the laws of Tennessee." SAC Ex. A, § 9. Section 10.9 of the Purchase Agreement provides "[t]his Agreement shall be governed by and construed in accordance with the laws of the State of New York, without regard to the conflicts of laws principles thereof." *Id.* Ex. F, § 10.9.

The Court concludes that neither the choice of law provision in the Settlement Agreement nor the choice of law provision in the Purchase Agreement encompasses Plaintiffs' negligent misrepresentation claim. These choice of law provisions are comparable to and closely mirror provisions that courts have held not to cover tort claims. *See, e.g.*, *McBeth*, 171 F. Supp. 3d at 224; *Frontline Processing Corp. v. Merrick Bank Corp.*, No. 13–CV–3956 (RPP), 2014 WL 837050, at *8 n. 4 (S.D.N.Y. Mar. 3, 2014) (holding that a choice of law clause which provided that "this Agreement and all rights and obligations hereunder, including but not limited to matters of construction, validity and performance, are governed by and construed in accordance with the laws of the State of New York," did not cover tort claims); *Twinlab Corp. v. Paulson*, 283 A.D.2d 570, 570 (2d Dep't 2001) (holding that a choice of law provision, which stated that the "validity, interpretation, construction and performance" of the agreement would be governed by and construed in accordance with New York law and also designated New York as the forum for any actions "relating directly or indirectly" to the agreement, did not cover a civil RICO claim); *cf. Cap. Z Fin. Servs. Fund II, L.P. v. Health Net, Inc.*, 840 N.Y.S.2d 16, 23 (1st Dep't 2007) (finding that a contractual choice of law clause encompassed a tort claim because the language of the provision stated that it covered "all issues concerning enforcement of the rights and duties of the parties.")

As explained above, a federal court sitting in diversity applies the choice of law rules of the forum state. *See Klaxon*, 313 U.S. at 496-97. Under New York's choice of law rules, the Court must first determine whether any conflict exists with respect to the negligent misrepresentation claim. Here, such a conflict exists. To state a claim for negligent misrepresentation under New York law, a plaintiff must allege "(1) the existence of a special or privity-like relationship imposing a duty on the defendant to impart correct information to the plaintiff; (2) that the information was incorrect; and (3) reasonable reliance on the information." *Crawford v. Franklin Credit Mgmt. Corp.*, 758 F.3d 473, 490 (2d Cir. 2014) (quoting *J.A.O. Acquisition Corp. v. Stavitsky*, 8 N.Y.3d 144, 148 (2007)). In contrast, to state a claim for negligent misrepresentation under Tennessee law, a plaintiff must plead that: "(1) the defendants were acting in the course of their business profession, or employment; (2) they supplied false information for the guidance of others; (3) they failed to exercise reasonable care in obtaining or communicating that information; (4) the plaintiff justifiably relied on the information; and (5) he suffered damages as a result." *See Robinson v. Omer*, 952 S.W.2d 423, 427 (Tenn. 1997). Because New York law requires a plaintiff to plead the existence of a special relationship, while Tennessee law does not, a clear conflict exists.

When a conflict exists, New York law requires courts to engage in an "interests analysis" and to apply the "law of the jurisdiction with the most significant interests in, or relationship to, the dispute." *White Plains Coat & Apron Co.*, 460 F.3d at 284. (citation and internal quotation marks omitted); *see also Schultz v. Boy Scouts*, 65 N.Y.2d 189, 196 (1985). For actions sounding in tort, the jurisdiction with the greatest interest is typically the jurisdiction in which the loss occurred or where the plaintiff is located. *See Odyssey Re (London) Ltd. v. Stirling Cooke Brown Holdings Ltd.*, 85 F. Supp. 2d 282, 292 (S.D.N.Y. 2000) (citation omitted). Nevertheless, the jurisdiction where the loss occurred is not conclusive and does not trump a full interests analysis. *See Cromer Fin. Ltd. v. Berger*, 137 F. Supp. 2d. 452, 492 (S.D.N.Y. 2001) (explaining that, in the context of fraud, where the loss was suffered

was not dispositive where a single state was overwhelmingly the center of gravity of the events at issue and that state's interest in regulating the conduct of work performed there was strong). Instead, the interests analysis is "flexible" and seeks "to give controlling effect to the law of the jurisdiction which, because of its relationship or contact with the occurrence of the parties, has the greatest concern with the specific issue raised in the litigation." *Fin. One Public Co. Ltd. v. Lehman Bro. Spec. Fin., Inc.*, 414 F.3d 325, 337 (2d. Cir. 2005) (citation and internal quotation marks omitted); *see also LaSala v. Bank of Cyprus Pub. Co.*, 510 F. Supp. 2d 246, 264 (S.D.N.Y. 2007). When weighing interests, New York law directs courts to distinguish between "conduct regulating" and "loss allocating" rules. *Lee v. Bankers Tr. Co.*, 166 F.3d 540, 543 (2d Cir. 1999). The elements of the tort of negligent misrepresentation are based on conduct regulating rules. *See Mark Andrew of the Palm Beaches, Ltd. v. GMAC Commercial Mortgage Corp.*, 265 F. Supp. 3d 366, 378 (S.D.N.Y. 2003) (explaining that misrepresentation rules are conduct regulating); *La Luna Enterp., Inc. v. CBS Corp.*, 74 F. Supp. 2d 384, 389 (S.D.N.Y. 1999) (same). When the conflict centers on rules that regulate conduct, the site of the tort, not the place of the loss governs. *Thomas H. Lee Equity Fund V, L.P. v. Mayer Brown, Rowe & Maw LLP*, 612 F. Supp. 2d 267, 283-84 (S.D.N.Y. 2009); *Emjayco v. Morgan Stanley & Co.*, No. 95 Civ. 8546 (DLC), 1996 WL 452266, at *4 (S.D.N.Y. Aug. 8, 1996).

The Court concludes that the complaint establishes that Tennessee has the "most significant interest in, or relationship to, the dispute." *White Plains Coat*, 460 F.3d at 284. The properties at issue in the case—the TVPOA Parcels—are in Tennessee. The Release Documents and quitclaim deeds pertain to Tennessee properties. SAC ¶ 35. The Loudon County Lawsuit, which gave rise the duties created by the Settlement Agreement, took place in Tennessee. SAC ¶ 46. The Monroe County lawsuit, which imposed liability on Paradiso, also took place in Tennessee. Accordingly, the Court finds that Tennessee has the most significant interest in this case and will apply Tennessee law to Plaintiffs' negligent misrepresentation claim. *See generally Thomas H. Lee Equity Fund V, L.P.*, 612

F. Supp. 2d at 284 (applying the law of the state where "the overwhelming bulk of events surrounding the alleged negligent misrepresentation" to a negligent misrepresentation claim after engaging in an interests analysis).

Plaintiffs' allege that "by their actions and words" Defendants misrepresented that they would timely record the Release Documents, tender a legal defense "against TVPOA's litigations" and resolve the issues surrounding the TVPOA Parcels subsequent to the execution of the Settlement Agreement. SAC ¶¶ 166-67. Plaintiffs contend that Defendants intended for Plaintiffs to rely on their representations; Plaintiffs allege that they did just that. *Id.* ¶ 168. However, because Plaintiffs fail to satisfy the required pleading standard, their claim, as pled, fails.

ii.    *Plaintiffs Have Not Adequately Pleaded a Negligent Misrepresentation Claim*

Federal district courts in Tennessee have concluded that claims of negligent misrepresentation must be pled with the particularity required by the heightened pleading standard articulated in Fed. R. Civ. P. 9(b). *See, e.g.*, *Pugh v. Bank of Am.*, No. 13-2020, 2013 WL 3349649; *Asemota v. Suntrust Mortg.*, 2012 U.S. Dist. LEXIS 83744, at * 31 (W.D.Tenn. June 12, 2012); *In re Nissan N. Am., Inc. Odometer Litig.*, 664 F. Supp. 2d 873, 881 (M.D.Tenn. 2009).[7] The Court will, therefore, apply Rule 9(b)'s pleading standard to Plaintiffs' negligent misrepresentation claim. Rule 9(b) provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Federal courts in Tennessee have held that "a plaintiff must (1) specify the time, place, and content of the alleged

---

[7] Similarly, decisions in this District have applied Rule 9(b)'s heightened pleading standard to claims of negligent misrepresentation. *See, e.g*, *BNP Paribas Mortg. Corp. v. Bank of Am., N.A.*, 949 F. Supp. 2d 486, 508 (S.D.N.Y. 2013); *Ebusinessware, Inc. v. Technology Services Group Wealth Management Solutions, LLC,* No. 08 Civ. 9101, 2009 WL 5179535, at *13 (S.D.N.Y. Dec. 29, 2009) (applying Rule 9(b) to plaintiff's negligent misrepresentation claim); *In re Marsh & Mclennan Cos. Sec. Litig.,* 501 F.Supp.2d 452, 495 (S.D.N.Y.2006) ("[n]egligent misrepresentation claims must be pleaded with particularity pursuant to Rule 9(b)"). *AIG Glob. Sec. Lending Corp. v. Banc of Am. Sec. LLC*, 254 F. Supp. 2d 373, 389 (S.D.N.Y. 2003) (explaining that "a claim for negligent misrepresentation must . . . satisfy the requirements of Rule 9(b)" and dismissing plaintiff's claim for failing to satisfy that standard).

misrepresentation; (2) identify the fraudulent scheme and the fraudulent intent of the defendant; and (3) describe the injury resulting from the fraud." *Tennial v. Bank of Am.*, No. 216-CV-02913 JTF CGC, 2017 WL 4707513, at *3 (W.D.Tenn. Oct. 19, 2017) (citing *U.S. ex. Rel. SNAPP, Inc. v. Ford Motor Co.*, 532 F.3d 496, 504 (6th Cir. 2008); *MedApproach Holdings, Inc. v. Hawkins*, No. 3:11-CV-1199, 2012 WL 6569268, at *4(M.D. Tenn. Dec. 17, 2012).

Plaintiffs' negligent misrepresentation fails to satisfy Rule 9(b)'s pleading standard. Plaintiffs cite two sources to support their negligent misrepresentation claim. First, Plaintiffs claim that they relied on the "assurances and representations" that Defendants made in the Settlement Agreement and Purchase Agreement and allege, without specificity, that Defendants' "actions and words" led them to believe that they execute these representations. SAC ¶¶ 116, 166-69. The complaint fails to specify the "time, place, and content" of any representations that could sustain their claim. *Tennial*, 2017 WL 4707513, at *3. Tennessee courts routinely dismiss negligent misrepresentation claims for such shortcomings. *Kattawar v. Logistics & Distribution Servs., Inc.*, No. 14-2701-STA-CGC, 2015 WL 508011, at *8 (W.D. Tenn. Feb. 6, 2015); *Sony/ATV Music Publ'g LLC v. 1729172 Ontario, Inc.*, No. 3:14-CV-1929, 2016 WL 4239920, at *6 (M.D. Tenn. Aug. 11, 2016). Second, Plaintiffs cite exhibits G, R, and S, attached to the Second Amended Complaint, in support of their claim. These exhibits fail to cure their pleading deficiency. Exhibits G, R, and S are e-mail exchanges between Choi and Adams regarding the recording of the Release Documents. The Plaintiffs are not copied on the e-mails and they do not allege, in their complaint, that they read the e-mails such that they could rely on any alleged misrepresentation. Therefore, even if the specificity of these exhibits brings Plaintiff closer to satisfying Rule 9(b)'s particularity pleadings, they do not support their negligent misrepresentation claim because Plaintiffs fail to allege that read them let alone relied on any representations that they contained. If the Plaintiffs did not access or read the e-mails, they could not have relied on their misrepresentations. *See Bearden v. Honeywell Int'l, Inc.*, No. 3:09-01035, 2010

WL 1223936, at *6 (M.D. Tenn. Mar. 24, 2010 (finding that plaintiffs could not claim that they relied on misstatements contained in documents where their complaint failed to allege that they read the documents); *see also Hill v. John Banks Buick, Inc.*, 875 S.W.2d 667, 670 (Tenn. Ct. App. 1993) ("It is axiomatic that no man can recover upon the theory of fraud or mistake with respect to any matter of fact about which he has actual knowledge or legally imputed knowledge.")

Furthermore, while Plaintiffs claim that they relied on the "assurances and representations" that Defendants made in the Settlement Agreement and Purchase Agreement, the terms of these agreements cannot sustain their negligent misrepresentation claim. SAC ¶¶ 116; 163-72. Under Tennessee law, "the tort of negligent misrepresentation cannot be based on representations of future events." *Int'l Mkt. & Rest., Inc. v. Belmont Univ.*, No. M201000005 COAR 3CV, 2010 WL 4514980, at *3 (Tenn. Ct. App. Nov. 9, 2010); *see also Knox v. Tennessee Farmers Mut. Ins. Co.*, No. C.A. 795, 1988 WL 55710, at *3 (Tenn. Ct. App. June 2, 1988) ("the misrepresentations must consist of a statement of a material past or present fact."); *Brungard v. Caprice Records, Inc.*, 608 S.W.2d 585, 590 (Tenn. App. 1980) ("[R]epresentations concerning future events are not actionable even though they may later prove to be false."). Therefore, to the extent Plaintiffs contend that the representations of future performance contained in the Purchase Agreement and Settlement Agreement support their negligent misrepresentation claim, this argument fails. Accordingly, Defendants' motion to dismiss Plaintiffs' claim for negligent misrepresentation is GRANTED. The Court grants plaintiff leave to replead this claim. *See Cruz*, 742 F.3d at 523 (2d Cir. 2013).[8]

## VI. CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is granted in part and denied in part. Defendants' motion to dismiss Plaintiffs' claim for breach of the Settlement Agreement (count

---

[8] Because the Complaint does not satisfy Rule 9(b)'s pleading standard, the Court does not reach Defendants' other arguments in support of dismissing the negligent misrepresentation claim.

one) is denied. Defendants' motion to dismiss Plaintiffs' claim for breach of the Purchase

Agreement (count two) is granted and Plaintiffs are denied leave to replead this claim. Defendants'

motion to dismiss Plaintiffs' claim for violation of Tennessee lien law (count three) is granted.

Finally, Defendants' motion to dismiss Plaintiffs' claim for negligent misrepresentation (count four)

is granted. Plaintiffs are granted leave to replead, as set forth above, with respect to count three and

count four no later than thirty days from the date of this order. The Clerk of Court is directed to

terminate the motions pending at Dkt. Nos. 43 and 59.

     SO ORDERED.

Dated: March 17, 2019
      New York, New York

                                                  _____
                                                   GREGORY H. WOODS
                                     United States District Judge