USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 2/20/2020

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------ X

FLATIRON ACQUISITION VEHICLE, LLC :
and CS PARADISO HOLDINGS, LLC, :
                                       :
                    Plaintiffs, :
                                        :
                  -v- :            1:17-cv-8987-GHW
                                        :
CSE MORTGAGE LLC, CAPITALSOURCE :    MEMORANDUM OPINION
COMMERCIAL LOAN, 2006-2, :            AND ORDER
CAPITALSOURCE FINANCE LLC, and :
CAPITALSOURCE INC. :
                                        :
                    Defendants. :

------------------------------------------------------------ X

GREGORY H. WOODS, United States District Judge:

       In March of 2013, Plaintiff Flatiron Acquisition Vehicle expressed interest in acquiring Plaintiff CS Paradiso Holdings, LLC, a real estate company owned and controlled by Defendants CSE Mortgage LLC and CapitalSource Commercial Loan LLC ("CapSource Commercial"). Before it entered a contract to purchase Paradiso, however, Flatiron learned of unresolved litigation involving the Tellico Village Property Owners Association (the "TVPOA"), which managed properties that Paradiso owned in exchange for assessments from the owners of these properties. Flatiron wanted the litigation to be resolved before it acquired Paradiso.

       On July 22, 2013, Joe Steinberg—counsel for CSE and CapSource Commercial—emailed Eric Diaz—counsel for Flatiron—and asserted that an agreement to settle that litigation (the "Settlement Agreement") was fully-compiled and fully-executed. There is a dispute among the parties to this litigation about whether this statement was accurate. However, Adams testified that the parties to the Settlement Agreement always intended for the exhibits to trail the execution of the Settlement Agreement. Under the Settlement Agreement, Paradiso, CapitalSource Finance LLC ("CapSource Finance"), and CapitalSource Inc. ("CapSource Inc." and, together with CapSource Commercial and CapSource Finance, the "CapSource Defendants") assumed obligations to convey

deeds or record documents to transfer ownership of certain lots in the Tellico Village from Paradiso back to the TVPOA.

Because it was satisfied that the litigation was settled, Flatiron purchased Paradiso. However, because final resolution of the Settlement Agreement was not a condition to the closing, Paradiso had continuing obligations under the Settlement Agreement after Flatiron acquired it. Inexplicably, Adams continued to work with the TVPOA on behalf of Paradiso to fulfill Paradiso's obligations under the Settlement Agreement, even though Adams had been retained by the CapSource Defendants and never signed an Engagement Letter with Paradiso or its new owner, Flatiron.

Paradiso and Defendants, now Paradiso's former owners, failed to fulfill their obligations under the Settlement Agreement by the deadline established in that agreement. Eventually, the TVPOA sued Paradiso and Defendants in Tennessee state court, seeking to recover unpaid assessments and other fees associated with the lots that Paradiso was meant to convey to the TVPOA. Because Paradiso had failed to turn over the lots in question to the TVPOA, the Tennessee court found that Paradiso had defaulted on its obligation to pay assessments and fees associated with the properties it was supposed to convey to the TVPOA under the Settlement Agreement.

Plaintiffs now claim that Steinberg negligently misrepresented that the Settlement Agreement was final when it was not. Because there are genuine issues of material fact about whether the exhibits to the Settlement Agreement were final and whether Plaintiffs reasonably relied on Steinberg's statement, Defendants' motion for summary judgment is DENIED as to Plaintiffs' negligent misrepresentation claim. However, Defendants' motion is GRANTED in all other respects.

# I. BACKGROUND[1]

## A. Facts[2]

### 1. The NRP Deed of Trust and Deed in Lieu of Foreclosure

On January 13, 2005, National Recreational Properties of Tellico Village, LLC ("NRP") executed an instrument titled "Deed of Trust, Security Agreement, Fixture Filing and Assignment of Rents" (the "NRP Deed of Trust") for the benefit of CapSource Finance. Ex. A to Declaration of Carolina A. Fornos In Support of Motion for Summary Judgment ("Fornos Decl."), Dkt No. 99-1.[3]

---

[1] The Court has previously issued an opinion in this case that provides further background on the dispute. *See Flatiron Acquisition Vehicle, LLC v. CSE Mortg. LLC (Flatiron I)*, No. 1:17-CV-8987-GHW, 2019 WL 1244294 (S.D.N.Y. Mar. 18, 2019).

[2] Unless otherwise noted, these facts are undisputed or are construed in the light most favorable to Plaintiffs because they are the non-moving party. *See Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir. 2012).

[3] Plaintiffs dispute that Ex. A to the Fornos Declaration "constitutes the entire, complete, accurate and controlling" NRP Deed of Trust. Pls. 56.1 at 2. Defendants note that the NRP Deed of Trust grants "first priority lien on and security interest in the Trust Estate" and that "[t]he term 'Trust Estate' is defined as the 'Land' more specifically described in Exhibit A to such document." *Id.* (quoting NRP Deed of Trust § B). However, Defendants note the NRP Deed of Trust "does not attach an Exhibit A setting forth which lots were part of the 'Trust Estate' for Loudon County." *Id.* at 3. Rather, the NRP Deed of Trust "only includes a 'Schedule C' . . . which lists only 98 lots (less than the 244 Loudon County lots to be conveyed per the PCSA)." *Id.* "Similarly, even though" the NRP Deed of Trust "attaches an Exhibit A for Monroe County . . . such Exhibit A only lists 3 lots (less than the 32 Monroe County lots to be conveyed per the PCSA)." *Id.*

Defendants argue in response that the "NRP Deed of Trust is a matter of public record for which the Court can take judicial notice," Reply Memorandum of Law in Support of Motion for Summary Judgment ("Rep."), Dkt No. 110, at 3 n.3, and have filed a request that the Court take judicial notice of the NRP Deed of Trust. *See* Request for Judicial Notice, Dkt No. 112, at 2. "The court may judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2). The court "*must* take judicial notice if a party requests it and the court is supplied with the necessary information." *Id.* 201(c)(2) (emphasis added).

"Judicial notice of public records . . . is clearly appropriate." *In re Enron Corp.*, 379 B.R. 425, 431 n.18 (S.D.N.Y. 2007) (citing *Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991)). However, a court may take judicial notice of a public record "not for the truth of the matters asserted" in the document "but rather to establish the fact" that the document exists. *Liberty Mut. Ins. Co. v. Rotches Pork Packers, Inc.*, 969 F.2d 1384, 1388 (2d Cir. 1992) (quotation omitted); *see also Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018) ("A court must also consider—and identify—which fact or facts it is noticing[.]").

Defendants have asked the Court to take judicial notice of the NRP Deed of Trust and have provided the Court with a sworn declaration attesting to the fact that the NRP Deed of Trust was filed publicly in the Register's Offices for Loudon and Monroe Counties in Tennessee. Fornos Decl. ¶ 2. While Defendants alleges that these documents are "incomplete," Defendants do not dispute that these documents are accurate representations of documents publicly recorded in Tennessee. Thus, the Court cannot reasonably question the accuracy of the NRP Deed of Trust. The Court notes that Defendants are not asking the Court to take judicial notice of which properties were conveyed by the NRP Deed of Trust, which could not be accurately and readily determined from that document without the missing Exhibit A. Rather, the Court can readily determine from the text of the NRP Deed of Trust that NRP "grant[ed] a first priority

The NRP Deed of Trust granted CapSource Finance a "first priority lien on and security interest" in NRP's Tellico Village lots (the "Tellico Village Lots") as security for indebtedness incurred by NRP. *Id.* § B. NRP subsequently defaulted on its various obligations under the NRP Deed of Trust. Deed in Lieu of Foreclosure, Ex. B to Fornos Decl., Dkt No. 105-1.

In response, NRP, CapSource Finance, and Plaintiff CS Paradiso Holdings LLC ("Paradiso") entered into a document titled "Deed in Lieu of Foreclosure" (the "DIL"), in which NRP admitted that it had defaulted on its indebtedness to CapSource Finance and agreed to convey all of its Tellico Village Lots to Paradiso, rather than having CapSource Finance foreclose on the properties. *Id.* at 2.[4] Paradiso was formed, as a subsidiary of CapSource Finance, shortly before this transaction for the purpose of holding title to certain real property previously owned by NRP, including the Tellico Village Lots. 56.1 Stmt ¶ 7. The DIL provided that the NRP Deed of Trust was to "remain in full force and effect" and that CapSource Finance, as lender, was "retaining, and is not canceling or re-conveying" the NRP Deed of Trust "in order to give [CapSource Finance] the flexibility to foreclose out any unforeseen and unwanted junior liens or other title problems, and to protect" CapSource Finance. DIL §§ 4.1, 6.1.

---

lien on and security interest in" certain properties to CapitalSource. Thus, pursuant to Rule 201(c)(2), the Court takes judicial notice of that fact.

[4] Plaintiffs dispute that exhibit B to the Fornos Declaration "constitutes the entire and complete DIL." Rule 56.1 Statement ("56.1 Stmt"), Dkt No. 106, at 7. Plaintiffs note that in the DIL, "'Property is conveyed to Paradiso'" and that under the definition of Property from the DIL, "Exhibit A should list all the property lots to be conveyed to Paradiso." *Id.* "Similarly, and pursuant to the same definition, Exhibit B should list all receivables and loans to be conveyed to Paradiso." *Id.* However, the DIL "does not attach an Exhibit A or an Exhibit B that show which lots and receivables were conveyed to Paradiso." *Id.*

To the extent that the omission of Exhibit A is problematic, Defendants have remedied the issue by resubmitting the DIL with Exhibit A attached as an exhibit to an affidavit from Sue Choi. *See* Declaration of Sue Choi in Support of Motion for Summary Judgment ("Choi Decl."), Dkt No. 113, ¶ 5; Ex. A to Choi Decl. With respect to the "missing" Exhibit B to the DIL, the Court finds that the fact that an Exhibit B is not attached to the DIL does not raise a dispute of material fact as to whether the NRP Deed of Trust remained in effect and as to whether CSF retained the NRP Deed of Trust. Consequently, the Court finds that there is no genuine issue of material fact as to the DIL for purposes of Defendants' motion for summary judgment.

Pursuant to the DIL, NRP executed two warranty deeds conveying all of the Tellico Village Lots to Paradiso. Warranty Deeds, Ex. C to Fornos Decl., Dkt No. 99-3.[5] Thus, Paradiso became the record owner of the Tellico Village Lots. *Id.* Paradiso itself did nothing for the transferred assets—it was the holding company into which CapSource Finance directed that the foreclosed properties be transferred. *Id.*

## 2. The 2010 Loudon County Lawsuit and the Settlement Agreement

In 2010, the TVPOA filed a lawsuit against Paradiso and the CapSource Defendants in Loudon County, Tennessee for past due property assessments on the Tellico Village Lots (the "2010 Loudon County Lawsuit"). 56.1 Stmt ¶ 14. In March 2013, Plaintiff Flatiron expressed an interest in purchasing Paradiso's assets. Declaration of Patrick McGrath in Opposition to Plaintiffs' Motion for Summary Judgment ("P. McGrath Decl."), Dkt No. 108, ¶ 4. However, during its due diligence, Flatiron discovered the existence of the 2010 Loudon County Lawsuit. *Id.* ¶ 5. Therefore, on April 22, 2013, Patrick McGrath—the "sole member of Plaintiff Flatiron Acquisition Vehicle," *id.* ¶ 1— emailed Sue Choi and Hans Sylvester, who were acting as counsel for the CapSource Defendants, and stated that Flatiron could "only" buy Paradiso "subject to the resolution of the TVPOA suit." Ex. H to Declaration of Luke McGrath in Opposition to Motion for Summary Judgment ("L. McGrath Decl."), Dkt No. 107-8, at 4. McGrath suggested alternatives if the suit remained unresolved, which included providing a judgment indemnity of $3.75 million or a discount to the purchase price of $1.5 to 2.25 million, plus a $1.5 million indemnity from Defendants for claims related to the TVPOA assets. *Id.* Sylvester responded that the CapSource Defendants were "hopeful [they could] reach an agreement" with respect to the lawsuit and requested that Flatiron

---

[5] Defendants ask the Court to take judicial notice of the Warranty Deeds. Request for Judicial Notice at 2. Because there is no dispute that these deeds were recorded in Loudon and Monroe Counties, *see* Fornos Decl. ¶ 4, the Court concludes that it may take judicial notice of the Warranty Deeds under Federal Rule of Evidence 201(c)(2).

give the CapSource Defendants "until the end of the week before we try to structure around the law suit." *Id.* at 3.

On July 22, 2013, the TVPOA executed the Settlement Agreement with Paradiso and the CapSource Defendants to resolve the 2010 Loudon County Lawsuit. Ex. H.1 to Third Amended Complaint ("TAC"), Dkt No. 83-8; *see also Flatiron I*, 2019 WL 1244294, at *2-3. Under the Settlement Agreement, Paradiso was required to convey certain of the Tellico Village Lots to the TVPOA by quitclaim deed (the "Quitclaim Deeds"), which were to be recorded by August 19, 2013. Settlement Agreement § 1(i), 3. The list of properties to be conveyed by quitclaim deed was to be contained in Exhibit A to the Settlement Agreement. *Id.* § 1(i), Ex. A. Paradiso was also required to "assign all of its interest in the corresponding contract for deeds" (the "Assignments") by August 19, 2013. *Id.* § 1(i), 3. The list of interests to be assigned was contained in Exhibit B. *Id.* § 1(i), Ex. B. In addition, Paradiso and the CapSource Defendants were jointly required to "record releases of" instruments encumbering the Tellico Village Lots (the "Release Documents"). *Id.* § 1(ii), 3.

The exhibits to the Settlement Agreement were not finalized when the parties executed the Settlement Agreement.[6] At the time the Settlement Agreement was executed, the exhibits were intended to "trail" execution of the Settlement Agreement and to be "slip-sheeted" at a later date, according to Oliver Adams, outside counsel for CapSource. Deposition of Oliver Adams ("Adams Dep."), Ex. K to TAC, Dkt No. 83-13, at 22:1-23; 87:5-21.[7]

---

[6] Defendants dispute that the exhibits to the Settlement Agreement were not finalized at the time the Settlement Agreement was executed. *See, e.g.*, Counter Statement to Rule 56.1 Statement ("Counter 56.1 Stmt"), Dkt No. 111, at 7. Adams' deposition testimony that the exhibits were intended to trail execution of the Settlement Agreement creates a disputed issue of fact as to whether the exhibits to the Settlement Agreement were finalized. As noted above, the Court must take the facts in the light most favorable to the non-moving party on this motion. Consequently, the Court will assume that the exhibits were not finalized at the time of the execution of the Settlement Agreement for purposes of this motion.

[7] The Court observes that the decision to exchange signature pages and "finalize" an agreement when the schedules referenced in it were not yet finalized is just one of several instances of imperfect practice by the transactional lawyers involved in this case, which together with the other instances, appears to have contributed significantly to the disputes involved in this litigation.

On July 22, 2013, Steinberg—acting as counsel for "Sellers" CSE and CapSource Commercial—emailed Eric Diaz—acting as counsel for Flatiron—stating that the Settlement Agreement was "now fully-executed[.]"  Ex. J to TAC, Dkt No. 83-12, at 2; P. McGrath Decl. ¶ 13. The next day, Steinberg emailed Diaz and attached what Steinberg claimed was the "[f]ully-compiled[,] fully-executed settlement agreement" to the email.  JS Email, Ex. K to L. McGrath Decl., Dkt No. 107-11, at 2.  Steinberg did not explain that the exhibits to the Settlement Agreement were intended to trail its execution.  Adams Dep. at 22:1-23; 87:5-21.

CapSource employees continued to exchange emails attempting to finalize the exhibits after the Settlement was allegedly fully executed.  On August 8, 2013, for example, J.R. Pabalan—a CapSource employee—emailed Adams, Choi, and Sylvester attaching lists that purported to correct previous errors in the list of properties in the exhibits.  Ex. U to L. McGrath Decl., Dkt No. 107-21, at 2-3.  In depositions, Choi, Sylvester, and Pabalan—the only CapSource employees to work on the deal—testified that they did not know whether the exhibits to the Settlement Agreement were ever finalized.  Deposition of Sue Choi ("Choi Dep."), Ex. L to L. McGrath Decl., Dkt No. 107-12, at 93:2-16; Deposition of J.R. Pabalan ("Pabalan Dep."), Ex. M to L. McGrath Decl., Dkt No. 107-13, at 83:2-8; Deposition of Hans Sylvester ("Sylvester Dep.), Ex. N. to L. McGrath Decl., Dkt No. 107-14, at 92:12-96:4.

### 3. The Purchase Agreement

Satisfied that the Settlement Agreement was finalized, Flatiron decided to move forward with its purchase of Paradiso.  Hence, on July 25, 2013—three days after the parties executed the Settlement Agreement—Flatiron, CSE, and CapSource Commercial executed a purchase agreement (the "Purchase Agreement") for Flatiron to purchase Paradiso.  Purchase Agreement, Ex. A to TAC, Dkt No. 83-1; *see also Flatiron I*, 2019 WL 1244294, at *3.  By the terms of the Purchase Agreement, Flatiron purchased Paradiso "AS IS" and "WITH ALL FAULTS."  Purchase Agreement § 4.3.

The Purchase Agreement contains negotiated "Conditions to Closing." *Id.* § 6.1. That

section sets forth several express conditions precedent to Flatiron's obligation to purchase Paradiso.

*Id.*; *see also Flatiron I*, 2019 WL 1244294, at *3. However, "Flatiron did not expressly require

resolution of the litigation that Flatiron knew the TVPOA had brought against the target of its

acquisition, nor did it contain a condition precedent requiring the delivery of any documents

necessary to satisfy the terms of the pre-existing Settlement Agreement." *Flatiron I*, 2019 WL

1244294, at *3. Thus, the Purchase Agreement did not contain "a condition precedent that the

requirements of the Settlement Agreement be satisfied before Flatiron purchased Paradiso." *Id.*

"Nor did the Purchase Agreement contain express contractual obligations requiring the sellers of the

Company to assist Flatiron and Paradiso in their compliance with the terms of the Settlement

Agreement." *Id.*[8]

After Flatiron closed on the purchase of Paradiso, Choi worked for CapSource, Adams had

been retained by CapSource, and CapSource no longer owned Paradiso. Adams Dep. at 42:23-44:3.

However, Choi continued to direct Adams to work to fulfill Paradiso's obligations under the

Settlement Agreement. *Id.* For example, Choi asked Adams to handle the recording of the

Quitclaim Deeds, even though this was exclusively Paradiso's obligation under the Settlement

Agreement. *Id.* at 42:23-43:17; *see also* July 29, 2013 Emails, Ex. T to TAC, Dkt No. 83-22, at 2.

Choi also requested that Adams send fully executed and recorded documents "for our records."

July 29, 2013 Emails at 2. At this point, Choi no longer worked for Paradiso and "had no authority"

to direct Adams on Paradiso's behalf. Choi Dep. at 109:23-111:21. Adams testified that he worked

with Choi and other members of her office to finalize the exhibits to the Settlement Agreement.

---

[8] This lacuna was arguably the second instance in which the transactional lawyers involved in this transaction failed to meet the highest standards of practice; had Flatiron's counsel included an express condition to closing, consistent with the expectations of its principal, the issues in this litigation may never have arisen.

Adams Dep. at 37:15-24. Adams never signed an engagement letter with, or received payment from, Flatiron, the new owners of Paradiso. *Id.* at 46:18-22.[9]

### 4. The 2015 Monroe County Lawsuit

Neither the Quitclaim Deeds, the Assignments, nor the Release Documents were recorded by August 19, 2013 as required by the Settlement Agreement. CapSource Finance delivered the Release Documents to the TVPOA on October 8, 2014. Counter 56.1 Stmt ¶ 79; Partial Trust Deed Release, Ex. C to L. McGrath Decl., Dkt No. 107-3. Patrick McGrath signed the Quitclaim Deeds on behalf of Paradiso on December 23, 2013. 56.1 Stmt ¶ 23; *see* Quitclaim Deeds, Ex. HH to TAC, Dkt No. 83-36, at 2. Both the Quitclaim Deeds and the Release Documents were recorded in September and October 2014 by the TVPOA. 56.1 Stmt ¶ 24. The Release Documents stated that each lien was released "[f]or sufficient consideration." 56.1 Stmt ¶ 41; Partial Trust Deed Release, at 1.

Pursuant to the Declaration of Covenants and Restrictions for Tellico Village, every owner of a Tellico Village lot agreed to pay the TVPOA an annual assessment fee (the "Assessments"). 56.1 Stmt ¶ 26; Declaration of Covenants and Restrictions, Tellico Village, Tennessee ("Covenants"), Ex. B to TAC, Dkt No. 83-2, at 16-19. Under section 7 of Article X of the Declaration, failure to remit payment resulted in the Assessments becoming delinquent, following which the TVPOA had the right to declare Assessments for the entire year due, with interest and extra costs. 56.1 Stmt ¶ 27; Covenants at 18.

In early 2014, the TVPOA declared Paradiso past due on assessments and declared all the assessments on the Tellico Village Lots for the 2014 calendar year due. TVPOA Resolution, Ex. E to Fornos Decl., Dkt No. 99-5, at 2. On May 8, 2015, the TVPOA sued Paradiso and the

---

[9] This is the third instance of puzzling conduct by counsel that may have contributed to this dispute: Counsel for Paradiso continued to be instructed by its former owner, rather than its current owners. Flatiron contends that, as a result, they were not aware of the continued work needed to consummate the Settlement Agreement.

CapSource Defendants in Monroe County, Tennessee for breach of the Settlement Agreement and for past due assessments ("the 2015 Monroe County Lawsuit"). 56.1 Stmt ¶ 30. On August 3, 2016, the Tennessee court granted summary judgment against Paradiso in the 2015 Monroe County Lawsuit for the past due assessments. *Id.* ¶ 31. The Tennessee court held that Paradiso was liable for assessments on 275 transferred lots from August 19, 2013 through the end of 2014, and for assessments on 24 retained lots from August 19, 2013 through the end of 2016. *Id.* ¶ 32. The TVPOA settled the 2015 Monroe County Lawsuit by entering into a settlement agreement with Paradiso and entering into a separate settlement agreement with the CapSource Defendants. *Id.* ¶ 33. Paradiso paid $330,000 to settle disputes with the TVPOA. Counter Stmt ¶ 84.

### B. Procedural History

On October 13, 2017, Flatiron and Paradiso commenced an action in New York state court against Defendants. *Flatiron I*, 2019 WL 1244294, at *5; Complaint, Ex. A to Notice of Removal, Dkt No. 1, at 2. Subsequently, Defendants removed the action to this Court. *Flatiron I*, 2019 WL 1244294, at *5; Notice of Removal at 1. Plaintiffs subsequently amended their complaint, Dkt No. 21, and again amended their complaint on February 12, 2018. Second Amended Complaint ("SAC"), Dkt No. 41. Defendants thereafter filed a motion to dismiss the SAC. Dkt No. 43.

The Court issued an opinion on that motion in *Flatiron I*. The Court denied Defendants' motion to dismiss Plaintiffs' breach of contract claim because the Court could not determine, at the motion to dismiss stage, "whether the parties' breaches were material nor whether it was Paradiso, CapitalSource, or CapitalSource Finance that first breached [the Settlement Agreement]." *Flatiron I*, 2019 WL 1244294, at *9. The Court dismissed Plaintiffs' claim for breach of the Purchase Agreement "against CapitalSource and CapitalSource Finance because they [were] not parties to the [PA]" and against CSE Mortgage and CapitalSource Commercial Loan because Plaintiffs could not

identify a contractual obligation that those defendants had violated. *Id.* at *12-13. The Court denied Plaintiffs leave to replead this claim because it concluded that repleading would be futile. *Id.* at *13.

The Court dismissed Plaintiffs' claim for violation of Tennessee lien law because "Plaintiffs' complaint [was] devoid of any allegation that Paradiso had a loan or other debt with any of the Defendants" as required under the lien law. *Id.* at *14. The Court also dismissed Plaintiffs' negligent misrepresentation claim because it "fail[ed] to satisfy [Federal Rule of Civil Procedure] 9(b)'s pleading standard" and because Plaintiffs could not rely on representations of future performance to sustain a negligent misrepresentation claim under Tennessee law. *Id.* at *17-18. The Court granted Plaintiffs leave to replead both of these claims. *Id.* at *14, *18.

Plaintiffs again amended their complaint on April 16, 2019. TAC, Dkt No. 83. The TAC asserts that "[t]his case has taken a turn" because "[d]iscovery has uncovered that [the Settlement Agreement] was executed before exhibits A, B and C to that document were finalized and agreed upon." *Id.* ¶ 1. In the TAC, Plaintiffs assert three causes of action. First, Paradiso alleges a breach of the Settlement Agreement against Defendants CapSource Inc. and CapSource Finance. *Id.* ¶¶ 215-25. Second, Paradiso alleges a violation of Tennessee lien law against all Defendants. *Id.* ¶¶ 226-65. Third, Paradiso and Flatiron allege a negligent misrepresentation claim against all Defendants. *Id.* ¶¶ 266-91.

Defendants subsequently filed an answer to the TAC with two counterclaims. Answer to Amended Complaint with Counterclaims, Dkt No. 87. Defendants' first counterclaim is that Plaintiffs breached the Settlement Agreement. *Id.* ¶¶ 75-87. Defendants' second counterclaim is for a declaratory judgment that it be named the "prevailing party" because the Purchase Agreement contains a clause awarding attorney's fees to the prevailing party and the Court dismissed Plaintiffs' claim under the Purchase Agreement with prejudice in its prior opinion. *Id.* ¶¶ 88-96.

Defendants filed a motion for summary judgment on all claims asserted in the TAC and on both of Defendants' counterclaims on June 28, 2019. Dkt Nos. 96-99, 103-05. Plaintiffs subsequently filed their opposition. Dkt Nos. 106-09. Defendants thereafter submitted a reply. Dkt Nos. 110-15.

## II. LEGAL STANDARD

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) ("[S]ummary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" (quoting former Fed. R. Civ. P. 56(c))). A genuine dispute exists where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," while a fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*

The movant bears the initial burden of demonstrating "the absence of a genuine issue of material fact," and, if satisfied, the burden then shifts to the non-movant to present "evidence sufficient to satisfy every element of the claim." *Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d Cir. 2008) (citing *Celotex*, 477 U.S. at 323). To defeat a motion for summary judgment, the non-movant "must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting former Fed. R. Civ. P. 56(e)). "The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson*, 477 U.S. at 252. Moreover, the non-movant "must do more than simply show that there is

some metaphysical doubt as to the material facts," *Matsushita*, 475 U.S. at 586 (citations omitted), and he "may not rely on conclusory allegations or unsubstantiated speculation." *Fujitsu Ltd. v. Fed. Express Corp.*, 247 F.3d 423, 428 (2d Cir. 2001) (internal quotation marks and citation omitted).

In determining whether there exists a genuine dispute as to a material fact, the Court is "required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Johnson*, 680 F.3d at 236 (internal quotation marks and citation omitted). The Court's job is not to "weigh the evidence or resolve issues of fact." *Lucente v. Int'l Bus. Machs. Corp.*, 310 F.3d 243, 254 (2d Cir. 2002) (citation omitted); *see also Hayes v. N.Y. City Dep't of Corr.*, 84 F.3d 614, 619 (2d Cir. 1996) ("In applying th[e] [summary judgment] standard, the court should not weigh evidence or assess the credibility of witnesses."). "Assessments of credibility and choices between conflicting versions of the events are matters for the jury, not for the court on summary judgment." *Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005) (citation omitted).

## III. DISCUSSION

### A. Tennessee Lien Law

#### 1. Satisfaction or Payment of the Debt

Defendants are entitled to summary judgment on Plaintiffs' lien law claim because that statute does not apply to Plaintiffs' claims. Tennessee's lien law is codified at § 66-25-101 and § 66-25-102 of the Tennessee code. Section 66-25-101 states:

> When a debt secured by a mortgage, deed of trust, or by lien retained in a deed of conveyance of land or bill of sale, or other instrument, has been fully paid or satisfied, the mortgagee, transferee, or assignee of the mortgagee or the legal holder of the debt secured by deed of trust or lien, who has received payment or satisfaction of the debt, must satisfy the record by a formal deed of release.

Tenn. Code Ann. § 66-25-101(a). This statute "requires . . . the existence of debt between parties" and Tennessee courts have held that "'[o]nly full payment or satisfaction [of the debt] triggers the

statute.'" *Flatiron I*, 2019 WL 1244294, at *14 (quoting *United Am. Bank of Memphis v. Gardner*, 706 S.W.2d 639, 643 (Tenn. Ct. App. 1985)).

Subsection (a) of section 66-25-102 provides that:

> If the holder of any debt secured by real property situated in this state fails to enter a proper release of record after having been fully paid or satisfied within forty-five (45) days from the receipt of a written request from the party making such payment, including, but not limited to, the maker, the mortgagor, the purchaser of the property covered by such instrument or any closing agent or attorney who has collected and transmitted funds for such payment, the holder of the debt shall forfeit to the party making such request the sum of one hundred dollars ($100).

Tenn. Code Ann. § 66-25-102(a).

In this case, CapSource Finance had a "'first priority lien on and security interest' in NRP's Tellico Village lots as . . . security for indebtedness incurred by NRP" pursuant to the NRP Deed of Trust. 56.1 Stmt ¶ 2. NRP defaulted on its obligations under the NRP Deed of Trust. *Id.* ¶ 4. NRP, CapSource Finance, and Paradiso then entered into the DIL in which NRP agreed to convey the Tellico Lots to Paradiso. *Id.* ¶ 5. The DIL provided that CapSource Finance was "retaining, and [was] not canceling or re-conveying the NRP Deed of Trust." *Id.* ¶ 6. Subsequently, TVPOA filed suit for past due property assessments on those lots. *Id.* ¶ 14. To settle that suit, Paradiso and the CapSource Defendants entered into the Settlement Agreement. *Id.* ¶ 15. After the parties entered the Settlement Agreement, CapSource Finance recorded the Release Documents, which stated that the outstanding liens on the Tellico Village lots were being released for "[f]or sufficient consideration." Partial Trust Deed Release, at 1.

Defendants argue that they are entitled to summary judgment on the lien law claim because "the debt underlying the liens on the Tellico Village Lots was never fully paid or satisfied by Paradiso." Memorandum of Law in Support of Motion for Summary Judgment ("Mem."), Dkt No. 103, at 15 (capitalization altered). Defendants further argue that "NRP never paid off or otherwise

satisfied the debt underlying the NRP Deed of Trust before or after it conveyed the Tellico Village Lots to Paradiso." *Id.* (citing 56.1 Stmt ¶¶ 5-6, 8-10).

Plaintiffs argue in response that "Paradiso, as owner of the Tellico Village Lots, satisfied the debt as to each lot by means of accord and satisfaction—i.e., the" Settlement Agreement. Memorandum of Law in Opposition to Motion for Summary Judgment ("Opp."), Dkt No. 109, at 15. As evidence that the debt was satisfied, Plaintiffs note that "the Release Documents prepared by CapSource refer to 'sufficient consideration' provided to release the liens." *Id.* (citing Partial Trust Deed Release at 1). Therefore, Plaintiffs argue that "there is a triable issue of fact as to whether release documents filed in September and October 2014 demonstrate the satisfaction of the debt." *Id.* at 17.

Plaintiffs' argument is foreclosed by the plain text of sections 66-25-101 and 66-25-102. Section 66-25-101 applies "[w]hen a debt secured by a mortgage, deed of trust, or by lien retained in a deed of conveyance of land or bill of sale, or other instrument, *has been fully paid or satisfied*[.]" Tenn. Code Ann. § 66-25-101(a) (emphasis added). Similarly, section 66-25-102(a) applies where "the holder of any debt" refuses to record a debt "after *having been fully paid or satisfied*[.]" Tenn. Code Ann. § 66-25-102(a) (emphasis added).

There is no evidence in the record to create a triable issue of fact about whether Paradiso ever paid or satisfied the debt owed by NRP to CapSource Finance. The DIL—in which NRP admitted its default on indebtedness to CapSource Finance and agreed to convey the Tellico Village Lots to Paradiso—provided that the NRP Deed of Trust "remain[ed] in full force and effect" and that CapSource Finance was "retaining, and is not canceling or re-conveying" the NRP Deed of Trust "to give [CapSource Finance] the flexibility to foreclose out any unforeseen and unwanted junior liens or other title problems, and to protect" CapSource Finance. DIL §§ 4.1, 6.1. There is no evidence that Paradiso paid or otherwise satisfied the debt that was secured by the Tellico Village

Lots; that debt was owed by NRP to CapSource Finance. Indeed, as noted by Defendants, "[s]atisfaction of the underlying debt owed by NRP to [CapSource Finance] could only result in consideration flowing to [CapSource Finance] as lienholder." Mem. at 15. Paradiso presents no evidence that it repaid the secured indebtedness. Instead, as Defendants aptly describe, "Paradiso's payment to [the] TVPOA under the [Settlement Agreement] was to settle the past due property assessments owed to [the] TVPOA that were the subject of the 2010 Loudon County Lawsuit." *Id.*; *see also* Choi Decl. ¶ 4.[10]

Paradiso argues that the statement in the Partial Trust Deed Release that CapSource Finance was releasing the liens "[f]or sufficient consideration" creates a triable issue of fact as to whether Paradiso paid or otherwise satisfied the debt owed by NRP to CapSource Finance. Partial Trust Deed Release at 1. However, Tennessee's intermediate appellate court explained why this argument is incorrect in *Gardner. Cf. Broder v. Cablevision Sys. Corp.*, 418 F.3d 187, 199-200 (2d Cir. 2005) ("As a federal court applying state law, [the Court is] generally obliged to follow the state law decisions of state intermediate appellate courts.") (citation omitted). In that case, a plaintiff argued that it had been damaged by the defendants' failure to record a release of a debt. *Gardner*, 706 S.W.2d at 641. The plaintiff argued that section 66-25-101 "is a statutory basis for the creation of a duty upon" the defendants "and the violation of the statute renders one liable in tort." *Id.* at 643. In rejecting that argument, the Gardner court noted that "[o]nly full payment or satisfaction triggers the statute." *Id.* The court first concluded that the debt had not been fully paid because "if full payment had been made" the plaintiff "would be paid and have no complaint whatsoever." *Id.* The court then concluded that the debt had not been satisfied because "[t]he release does not purport to state the

---

[10] Moreover, section 66-25-102(a) applies only after the holder of a debt receives a request "from the party making such payment[.]" Tenn. Code Ann. § 66-25-102(a). Here, Plaintiffs' evidence does not create a genuine dispute of fact about whether Paradiso made a payment to CapSource Finance. Paradiso did not; rather, it was recipient of asserts directed to it by CapSource Finance.

debt has been satisfied. In fact, it states the contrary and *expressly releases the lien only*." *Id.* (emphasis added).

The same is true in this case. The Partial Trust Deed Release—which Plaintiffs point to as evidence that there is a material issue of fact about whether the debt owed to CapSource Finance by NRP was "satisfied" as required by section 66-25-101(a)—states only that CapSource Finance is releasing the liens for sufficient consideration, not for full payment of the underlying indebtedness. Partial Trust Deed Release at 1. Yet the *Gardner* court persuasively explained why a document that "expressly releases the lien only" is insufficient to meet section 66-25-101(a)'s satisfaction requirement. 706 S.W.2d at 643. Accordingly, Plaintiffs have not carried their burden to present a genuine issue of material fact for trial and Defendants are entitled to summary judgment on Plaintiffs' lien law claim.[11]

---

[11] Defendants also argue that because Paradiso did not owe a debt *to CapSource Finance*, it cannot assert a lien law claim. In other words, Defendants argue that a plaintiff must be in privity with a defendant to enforce section 66-25-101(a). Plaintiffs dispute that the statute requires Paradiso to have owed a debt to CapSource Finance to enforce that statute.

Read in isolation, the text of section 66-25-101(a) is ambiguous on this point. The statute is clear that it applies when "the legal holder of the debt secured by deed of trust or lien, who has received payment or satisfaction of the debt" does not record a "formal deed of release." Tenn. Code Ann. § 66-25-101(a). CapSource Finance was the holder of a lien on the Tellico Village lots. However, the statute does not clearly articulate a requirement that the debt must be owed to a particular party. The statute states only that it applies "[w]hen a debt secured by a . . . deed of trust . . . has been fully paid or satisfied[.]" *Id.*

There is some case law in Tennessee lower courts that supports the argument that Paradiso must have been in privity with at least one of the Defendants for it to make a claim under the lien law. In *Koella v. Cove Mt. Dev. Corp.*, the Tennessee court of appeals—interpreting section 66-25-101(a)—held that "only the mortgagor, who is in privity of contract with the mortgagee, has a cause of action against the mortgagee for the mortgagee's failure to release a trust deed." C/A 674, 1986 WL 9311, at *2, (Tenn. Ct. App. Aug. 29, 1986) (citing *Satine v. Koier*, 164 A.2d 913 (Md. 1960)).

However, the Court does not read section 66-25-101(a) to enforce a strict privity requirement because this reading is undermined by section 66-25-102(a). Section 66-25-102(a) expressly provides that parties who are not in privity with the debt holder—such as "the purchaser of the property covered by" a "debt secured by real property"—may make a "written request" to the "holder" of the debt "to enter a proper release of record" once the debt has been "fully paid or satisfied[.]" Tenn. Code Ann. § 66-25-102(a).

Section 66-25-101(a) must be interpreted in light of section 66-25-102(a). Section 66-25-101(a) describes the requirements for a record of release; section 66-25-102(a) sets out the penalties for failing to meet these requirements. Thus, the correct interpretation of each of these sections depends on the interpretation of the other. If section 66-25-101(a) only applies to parties in contractual privity, then a purchaser of property secured by a lien has no right under this section to request that the holder of the debt record the release. But that interpretation does not square with section 66-

## 2. Notice

Defendants also argue that they are entitled to summary judgment on the lien law claim because Paradiso did not make a written request to record the Release Documents. Section 66-25-102(a) requires that the party making a payment make a "written request . . . to enter a proper release of record[.]" Tenn. Code Ann. § 66-25-102(a). Tennessee courts interpreting this section have required that such a demand be "clear and definite." *Phillips v. Cottage Grove Bank & Tr. Co.*, 8 Tenn. App. 98, 103 (Tenn. Ct. App. 1928).

Paradiso identifies three statements that it argues constituted written requests to record the Release Documents. First, Paradiso argues that the execution of the Settlement Agreement itself was a written request. Second, Plaintiffs argue that Paradiso made a written request in an email from Adams to Choi on September 30, 2013. *See* Ex. F to L. McGrath Decl., Dkt No. 107-6, at 3 ("[D]o you think you could send me executed pdf versions of the quitclaim deeds and releases by tomorrow?"). Third, Plaintiffs argue that Paradiso made a written request in an email from Adams to Choi, Steinberg, Sylvester, and Pabalan on October 1, 2013. *See* Ex. G to L. McGrath Decl., Dkt

---

25-102(a), which expressly contemplates that the purchaser of such property can make a written request for the holder of the debt to record a release.

*Gardner* supports this interpretation. In that case, the intermediate appellate court held that "the simple failure to record a release or for that matter a trust deed or a warranty deed does not constitute a tort. Such failure may well give rise to an action in contract to parties in privity *or contemplated* but does not create a cause of action in any member of the general public who might be injured thereby." 706 S.W.2d at 643 (emphasis added); *see also id.* (noting that if section 66-25-101(a) granted a cause of action to any party allegedly injured by a failure to record "every title examiner who lists an unreleased trust deed on a title commitment would have a cause of action against the party who negligently failed to release the trust deed. Every homeowner who has failed to record his release deed sent him by the mortgage company after thirty years of payment would have committed a tort."). The requirement that parties be in privity or contemplated harmonizes sections 66-25-101(a) and 66-25-102(a) because it loosens the strict privity requirement suggested by *Koella*. Because it has already decided to grant summary judgment to Defendants on an alternative ground, the Court need not reach the question of whether Paradiso was in "privity or contemplated" with Defendants such that it would be covered by the Tennessee lien law.

No. 107-7, at 2 ("If Hans will email me pdfs of the executed releases and send originals to me, I would appreciate it.").[12]

None of the statement identified by Plaintiffs satisfies the requirements of section 66-25-102(a).[13] The Settlement Agreement cannot be characterized as a "written request." The Settlement Agreement required that Paradiso, CapSource Finance, and CapSource Inc. record the Release Documents no later than August 19, 2013. Settlement Agreement § 1(ii), 3. Thus, the Settlement Agreement created a co-equal obligation on behalf of Paradiso to record the Release Documents; it was not a written request from Paradiso to CapSource Finance and CapSource Inc. to record the Release Documents. The emails from Adams also were not written requests. They do not request that CapSource Finance record the releases. Rather, they inquire whether CapSource Finance employees can send the releases to Adams. Hence, the emails were not sufficiently clear and definite to constitute a written request under section 66-25-102(a). Consequently, Paradiso did not make a written request under section 66-25-102(a). This is an alternative ground on which Defendants are entitled to summary judgment on Plaintiffs' lien law claim. Accordingly, the Court grants summary judgment to Defendants on this claim.[14]

---

[12] The Court notes that it is unclear whether Adams was acting on behalf of Paradiso when he sent these emails, as he had been retained by the CapSource Defendants and never signed an engagement letter with Flatiron or Paradiso after the sale had taken place.

[13] Defendants also argue that "even if the latter two demands made on September 30 and October 1, 2013 are found to be sufficiently definite to give notice to CapSource Finance to release the liens, Tennessee's Lien Law only provides relief when a second demand is made forty-five days after the first demand is made." Mem. at 17 n.3. This argument mischaracterizes section 66-25-102. That statute provides that "[i]f the holder of any debt secured by real property . . . fails to enter a proper release of record after having been fully paid or satisfied within forty-five (45) days from the receipt of a written request . . . the holder of the debt shall forfeit to the party making such request the sum of one hundred dollars ($100)." Tenn. Code Ann. § 66-25-102(a). As the text makes clear, if the holder of the debt—here, CapSource Finance—fails to record the release within forty-five days, the holder is liable. Because the releases were not recorded until October 2014, CapSource Finance would be liable under section 66-25-102 if the other requirements of that statute were met.

[14] Because the Court has concluded that Defendants are entitled to summary judgment on this claim, it does not reach their argument that Plaintiffs' lien law claim is time-barred.

### B. Negligent Misrepresentation

Defendants have not carried their burden to show that they are entitled to judgment as a matter of law on Plaintiffs' negligent misrepresentation claim because there is a material issue of fact about whether the exhibits to the Settlement Agreement were finalized and whether Plaintiffs reasonably relied on the JS Email. As a threshold matter, the parties disagree on whether New York or Tennessee law applies to this claim. In *Flatiron I*, the Court conducted a detailed choice-of-law analysis and concluded that Tennessee law governed Plaintiffs' negligent misrepresentation claim. 2019 WL 1244294, at *15-17. Although the statements upon which that claim is predicated have changed, the Court's conclusion that "Tennessee has 'the most significant interest in, or relationship to, the dispute'" has not. *Id.* at *17 (quoting *White Plains Coat & Apron Co., Inc. v. Cintas Corp.*, 460 F.3d 281, 284 (2d Cir. 2006)).[15] It is still true that "[t]he properties at issue in the case—the TVPOA Parcels—are in Tennessee. The Release Documents and quitclaim deeds pertain to Tennessee properties. The Loudon County Lawsuit, which gave rise the duties created by the Settlement Agreement, took place in Tennessee. The Monroe County lawsuit, which imposed liability on Paradiso, also took place in Tennessee." *Id.* Hence, the Court applies Tennessee law to Plaintiffs' claim.

Plaintiffs assert a claim for negligent misrepresentation. TAC at 53. The elements of a negligent misrepresentation claim under Tennessee law are that:

> (1) the defendant is acting in the course of his business, profession, or employment, or in a transaction in which he has a pecuniary (as opposed to gratuitous) interest; and (2) the defendant supplies faulty information meant to guide others in their business transactions; and (3) the defendant fails to exercise reasonable care in obtaining or communicating the information; and (4) the plaintiff justifiably relies upon the information.

---

[15] Defendants argue that New York law should apply but, inexplicably, they completely fail to engage with the Court's prior analysis on this issue.

*Dixon v. Producers Agric. Ins. Co.*, 198 F. Supp. 3d 832, 837 (M.D. Tenn. 2016) (quoting *Robinson v. Omer*, 952 S.W.2d 423, 427 (Tenn. 1997)). Plaintiffs argue that the JS Email was a misrepresentation.[16] In that email, Steinberg emailed Diaz that the "[f]ully-compiled, fully-executed settlement agreement [was] attached." JS Email. However, Plaintiffs have presented evidence that creates a disputed issue of fact about whether the exhibits to the Settlement Agreement were finalized at the time the JS Email was sent. Adams testified that the parties intended to "slip-sheet[]" the exhibits after closing. Adams Dep. at 22:1-23.

Defendants dispute that the exhibits to the Settlement Agreement were not final when the Settlement Agreement was executed. In support, Defendants cite a declaration submitted by Richard Brabham, counsel for the TVPOA. *See* Brabham Decl. ¶ 4. Defendants seem to rely on Brabham's statement that "[i]n 2013 and through October 2014, Paradiso was record owner of a fee interest in 276 properties located in Monroe and Loudon counties, including 275 lots within the Tellico Village development[.]" *Id.* Defendants argue that, by making this statement, Brabham— and through Brabham, the TVPOA—conveyed their understanding that the exhibits to the Settlement Agreement were final. However, Plaintiffs have produced an email from Brabham to Adams on August 7, 2013 in which Brabham states that he "need[ed] a list for Exhibit B to the Settlement Agreement sufficiently identifying the CFD rights assigned." Ex. J to L. McGrath Decl., Dkt No. 107-10, at 2. This email appears to be inconsistent with an argument that Brabham and the TVPOA understood the exhibits to be final on July 25, 2013, the date the Purchase Agreement was executed. Taking the facts in the light most favorable to Plaintiffs—as the Court must on this

---

[16] Plaintiffs also point to three other emails that, they argue, are actionable misrepresentations. *See* Ex. U to TAC, Dkt No. 83-23; Ex. W to TAC, Dkt No. 83-25; Ex. NN to TAC, Dkt No. 83-42. However, of these four emails, only the JS Email was sent before the parties executed the Purchase Agreement. Therefore, to the extent that Plaintiffs' damages are based on their contention that they were induced to enter the Purchase Agreement based on a misrepresentation, the JS Email is the only statement that can serve as a basis for Defendants' liability.

motion—there is an issue of fact as to whether the exhibits were finalized when the Settlement Agreement was executed.

Defendants raise four additional arguments in support of their motion. First, Defendants argue that "Plaintiffs[] fail to plead their negligent misrepresentation claim with sufficient particularly pursuant to Fed. R. Civ. P. 9(b)." Mem. at 18 (capitalization altered). Second, Defendants argue that "Plaintiffs' negligent misrepresentation claim is time-barred under Tennessee's three-year statute of limitations." *Id.* at 19 (capitalization altered). Third, Defendants argue that "Plaintiffs waived their argument that the [Settlement Agreement] was not final." *Id.* at 21 (capitalization altered). Fourth, Defendants argue that "Plaintiffs cannot establish that they relied on" emails from Defendants "or that their reliance was justified." *Id.* at 22 (capitalization altered).

### 1. Particularity of the Alleged Misrepresentations

As an initial matter, the Court notes that although this motion is styled as a motion for summary judgment, it challenges the sufficiency of Plaintiffs' pleading. Hence, the Court will construe this part of Plaintiffs' motion as a motion for judgment on the pleadings. *See* Fed. R. Civ. P. 12(c) ("After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings."). The legal standard for a Rule 12(c) motion is the same as for a motion under Rule 12(b)(6). *See City of New York v. Beretta U.S.A. Corp.*, 524 F.3d 384, 392 (2d Cir. 2008) (noting that the "legal standards of review for motions to dismiss and motions for judgment on the pleadings are indistinguishable") (quotation omitted). Therefore, as for a motion to dismiss under Rule 12(b)(6), the facts in the TAC are accepted as true for purposes of this portion of Defendants' motion. *See, e.g., Flatiron I*, 2019 WL 1244294, at *5; *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002).

Plaintiffs' negligent misrepresentation claim is alleged with sufficient particularity. As the Court explained in its prior opinion, "[f]ederal district courts in Tennessee have concluded that

claims of negligent misrepresentation must be pled with the particularity required by the heightened pleading standard articulated in Fed. R. Civ. P. 9(b)." *Flatiron I*, 2019 WL 1244294, at \*17 (citing *Pugh v. Bank of Am.*, No. 13-2020, 2013 WL 3349649, at \*9 (W.D. Tenn. July 2, 2013); *Asemota v. Suntrust Mortg., Inc.*, No. 11-2816-STA-DKV, 2012 WL 12550260, at \*9 (W.D. Tenn. June 18, 2012); *In re Nissan N. Am., Inc. Odometer Litig.*, 664 F. Supp. 2d 873, 881 (M.D. Tenn. 2009)). Rule 9(b) provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). "Federal courts in Tennessee have held that 'a plaintiff must (1) specify the time, place, and content of the alleged misrepresentation; (2) identify the fraudulent scheme and the fraudulent intent of the defendant; and (3) describe the injury resulting from the fraud.'" *Flatiron I*, 2019 WL 1244294, at \*17 (quoting *Tennial v. Bank of Am.*, No. 216-CV-02913 JTF CGC, 2017 WL 4707513, at \*3 (W.D. Tenn. Oct. 19, 2017)).

Here, Plaintiffs have identified the JS Email and three other emails that they allege were fraudulent. Plaintiffs have also identified Defendants' allegedly fraudulent scheme and intent; Plaintiffs allege that Defendants induced them to enter into the Purchase Agreement based on the misrepresentations. And Plaintiffs have alleged that they were injured by entering into the Purchase Agreement when the exhibits to the Settlement Agreement were not finalized. Accordingly, Defendants' motion—which the Court has construed as a motion for judgment on the pleadings as to this ground—is denied.

### 2. Statute of Limitations

Plaintiffs' claim is not time-barred because they did not have actual or constructive knowledge of the misrepresentation until a date within three years before they filed this action. Misrepresentation claims are subject to a three-year statute of limitations in Tennessee. *See* Tenn. Code Ann. § 28-3-105(1); *Rhynes v. Bank of Am.*, 12-2683, 2013 WL 12095158, at \*6 (W.D. Tenn. Mar. 26, 2013), *on reconsideration*, 12-2683, 2014 WL 12531097 (W.D. Tenn. July 21, 2014) ("Rhynes'

claims for negligent and intentional misrepresentation are untimely under the three-year statute of limitations.").[17]  "A cause of action accrues for either intentional or negligent misrepresentation when a plaintiff discovers, or in the exercise of reasonable care and diligence, should have discovered, his injury and the cause thereof."  *Ne. Knox Util. Dist. v. Stanfort Constr. Co.*, 206 S.W.3d 454, 459 (Tenn. Ct. App. 2006) (quoting *Med. Educ. Assistance Corp.*, 19 S.W.3d at 817).  The three-year statute of limitations for intentional or negligent misrepresentation is tolled "only during the period when the plaintiff has no actual or constructive knowledge of the alleged wrong."  *Id.*

Plaintiffs first raised their negligent misrepresentation claim on December 22, 2017.  *See* First Amended Complaint, Dkt No. 21, at 25.  The JS Email is dated July 23, 2013, which is more than three years before Plaintiffs raised their misrepresentation claim.  However, Plaintiffs did not discover that the exhibits to the Settlement Agreement were not finalized until they engaged in discovery in this litigation and discovered the JS Email.  Thus, there is no basis for the Court to conclude at this stage that Plaintiffs had actual knowledge that the exhibits to the Settlement Agreement were not finalized at the time the Settlement Agreement was executed.

Defendants argue that Plaintiffs are precluded from arguing that they did not have constructive knowledge of the fact that Settlement Agreement was not final because the Settlement

---

[17] *See also Humphreys v. Bank of Am.*, 557 F. App'x 416, 422 (6th Cir. 2014) ("[T]he property-injury provision's three-year period applies to . . . misrepresentation claims[.]") (citing *Med. Educ. Assistance Corp. v. State ex rel. E. Tenn. State Univ. Quillen Coll. of Med.*, 19 S.W.3d 803, 817 (Tenn. Ct. App. 1999)); *Russell v. Household Mortg. Services*, M2008-01703-COA-R3CV, 2012 WL 2054388, at *5 (Tenn. Ct. App. June 7, 2012) ("The parties agree that the statute of limitations applicable to Ms. Russell's causes of action for intentional and negligent misrepresentation and fraud is the three-year statute of limitations found at Tenn. Code Ann. § 28-3-105."); *Vance v. Schulder*, 547 S.W.2d 927, 932 (Tenn. 1977)); *Hira v. New York Life Ins. Co.*, 3:12-CV-373, 2014 WL 2177799, at *4 (E.D. Tenn. May 23, 2014) ("Under Tennessee law, claims for both fraud and misrepresentation are generally governed by a three-year statute of limitations as set forth in Tennessee Code Annotated Section 28-3-105.") (quoting *Jackson v. WMC Mortg. Corp.*, No. 2:12-cv-02914-JPM-cgc, 2013 WL 5550228, at * 11 (W.D. Tenn. Oct.8, 2013)); *Fulmer v. Sinks*, 89-343-II, 1990 WL 34937, at *4 (Tenn. Ct. App. Mar. 30, 1990) ("We agree that the plaintiffs did properly allege in their complaint the common law action of fraudulent misrepresentation and that the three-year statute of limitations of Tenn. Code Ann. § 28-3-105 would be applicable in this case."); *Berry v. Mortg. Elec. Registration Sys.*, W2013-00474-COA-R3CV, 2013 WL 5634472, at *6 (Tenn. Ct. App. Oct. 15, 2013) ("Claims for fraud, including intentional misrepresentation, must be made within three years of the accrual of the cause of action.") (citing Tenn. Code Ann. § 28-3-105; *Russell*, 2012 WL 2054388, at *5).

Agreement was incorporated into the Purchase Agreement, *see* Purchase Agreement, Schedule C No. 65, and the Purchase Agreement contains a merger clause.[18]  The Purchase Agreement also states that "[t]he Seller shall have delivered to the Buyer . . . all contracts to which the Company is a party, which contracts are set forth on Schedule C attached hereto and incorporated herein." *Id.* § 6.1(c).

Construing the facts in the light most favorable to Plaintiffs, the Court cannot conclude at this stage that they had constructive knowledge of the fact that the exhibits to the Settlement Agreement were not finalized.  Plaintiffs could not have discovered through "the exercise of reasonable care and diligence" that the exhibits attached to the JS Email were not finalized.  *Ne. Knox Util. Dist.*, 206 S.W.3d at 459.  Indeed, in the JS Email, Steinberg communicated that these exhibits *were* finalized.  While it is true that the Purchase Agreement required Defendants to provide Plaintiffs with a copy of the Settlement Agreement, there is no evidence in the record before the Court that this copy of the Settlement Agreement contained different exhibits than those contained in the JS Email.  Although Plaintiffs might have reasonably discovered that the exhibits were not finalized if the exhibits to the purportedly finalized version of the Settlement Agreement differed from those in the JS Email or if it lacked exhibits entirely, there is no basis for the Court to conclude on this motion that there was such a difference.  And in the absence of any difference between the exhibit lists, the Court cannot conclude that Plaintiffs could reasonably have discovered that the exhibits were not finalized.  Therefore, because the Court cannot conclude as a matter of law that Plaintiffs had actual or constructive knowledge that the exhibits to the Settlement Agreement were

---

[18] *See id.* Article 10.1 ("This Agreement (together with the documents delivered pursuant hereto) supersedes all prior documents, understandings, and agreements, oral or written, relating to this transaction and constitutes the entire understanding among the parties with respect to the subject matter hereof.  Any modification or amendment to, or waiver of, any provision of this Agreement (or any document delivered pursuant to this Agreement unless otherwise expressly provided therein) may be made only by an instrument in writing executed by the party against whom enforcement thereof is sought.").

not final until after they raised their negligent representation claim, it cannot grant summary judgment to Defendants on the ground that the claim is time barred.

### 3. Waiver and Law of the Case

Plaintiffs have not waived their argument that exhibits to the Settlement Agreement were not finalized, nor is this argument blocked by law of the case, because their claim is based on new information obtained in discovery.  Defendants argue that Plaintiffs have waived any argument that the exhibits were not finalized because they agreed that the Settlement Agreement was final at the motion to dismiss stage of this litigation.  *See* Mem. at 22 (citing *In re Omnicom Grp., Inc. Sec. Litig.*, No. 02 Civ. 4483 WHP MHD, 2007 WL 2376170, at *7 (S.D.N.Y. Aug. 10, 2007) (holding that a "litigant's initial position constitute[s] a waiver of his later contrary position").  Defendants also argue that Plaintiffs' argument is barred by law of the case.  *Id.* at 21 (citing *Am. Civil Liberties Union v. United States Dep't of Justice,* 252 F. Supp. 3d 217, 226 (S.D.N.Y. 2017) ("[A] decision on an issue of law made at one stage of a case becomes binding precedent to be followed in subsequent stages of the same litigation.").

Although it is true that Plaintiffs did not contest the finality of the exhibits to the Settlement Agreement, Plaintiffs took that position before they had uncovered the JS Email.  The doctrines of waiver and law of the case do not apply to foreclose Plaintiffs' arguments in these circumstances. *Cf. Endo Pharm., Inc. v. Roxane Laboratories, Inc.*, 13-CV-03288 TPG, 2014 WL 6390297, at *2 (S.D.N.Y. Nov. 14, 2014) ("[T]here are a number of reasons that may warrant departure from the law of the case, including 'the discovery of new and different material evidence that was not presented in the prior action[.]'") (quoting *Intergraph Corp. v. Intel Corp.*, 253 F.3d 695, 698 (Fed. Cir. 2001)).  Hence, Defendants are not entitled to summary judgment on this ground.

### 4. Reliance

#### a. Actual Reliance

Defendants' next argument is that Plaintiffs did not actually rely on their emails. Defendants argue that Plaintiffs cannot establish actual reliance because Plaintiffs were not copied on the emails. However, Plaintiffs' counsel, Eric Diaz, was copied on these emails and Plaintiffs have presented a sworn statement from Patrick McGrath that "[a]fter Diaz received this email, his office informed me that we had received proof demonstrating that the [Settlement Agreement] was final and that we had the final exhibits to the final agreement." P. McGrath Decl. ¶ 20.

Defendants argue that this statement is "inadmissible double-hearsay pursuant to Fed. R. Evid. 802[.]" Rep. at 9. However, this statement is not hearsay because it is not being offered "to prove the truth of the matter asserted" but rather to show that Patrick McGrath had knowledge of the emails that form the basis for Plaintiffs' negligent misrepresentation claim. Fed. R. Evid. 801(c)(2). Defendants also argue that "Plaintiffs do not provide any details to substantiate their receipt or knowledge of the e-mails, and instead improperly rely on statements by their counsel without identifying the day and time that these statements were made." Rep. at 9. But Patrick McGrath's declaration states that McGrath relied on information he received from Diaz—who was acting as counsel for, and thus as an agent of, Flatiron and Paradiso—and who was copied on the emails. *Cf. Arch Specialty Ins. Co. v. Cline*, 10-2114-STA-DKV, 2012 WL 12823706, at *4 (W.D. Tenn. Dec. 4, 2012) ("[U]nder Tennessee law . . . courts impute knowledge of the agent to the principal.") (citing *Beasley v. Metro. Life Ins. Co.*, 229 S.W.2d 146, 146-48 (Tenn. 1950)). Thus, Defendants have not carried their burden to show that they are entitled to judgment as a matter of law on the question of whether Plaintiffs actually relied on their emails.

### b. Reasonable Reliance

There is also a disputed issue of material fact as to whether Plaintiffs' reliance was reasonable. Under Tennessee law, "although contracting parties have a duty to disclose material facts affecting the essence of a contract's subject matter, a party does not have a duty to disclose a material fact where ordinary diligence would have revealed the undisclosed fact." *Roopchan v. ADT Sec. Sys., Inc.*, 781 F. Supp. 2d 636, 650 (E.D. Tenn. 2011) (quoting *Odom v. Oliver*, 310 S.W.3d 344, 349-50 (Tenn. Ct. App. 2009) (emphasis omitted). Defendants argue that "Plaintiffs are sophisticated business entities that were represented by counsel and had the opportunity to conduct due diligence on files and public records, and read the [Purchase Agreement] and all of its attachments." Mem. at 23. Defendants note that "[t]he [Purchase Agreement] provided Flatiron with a due diligence period to review Paradiso's files and Flatiron agreed to purchase Paradiso AS IS, WITH ALL FAULTS." *Id.* (citing Purchase Agreement §§ 1.2, 4.3). Thus, according to Defendants "even assuming that the [Settlement Agreement] was not final, it was not reasonable for Plaintiffs to rely on" emails from Defendants. *Id.*

This argument is unconvincing because—construing the facts in the light most favorable to Plaintiffs—they did not simply fail to read the Settlement Agreement, *cf. Roopchan*, 781 F. Supp. 2d at 655, but rather believed that the exhibits were finalized when they were not. As discussed in section II.B.2, there is no basis for the Court to conclude—based on the record now before the Court—that Plaintiffs could have discovered that the exhibits were not finalized by reading the Settlement Agreement. Taking the facts in the light most favorable to Plaintiffs, the copy of the Settlement Agreement they received pursuant to the Purchase Agreement mirrored the exhibit list attached to the JS Email. Thus, given the facts now before the Court, it cannot conclude that Plaintiffs could have discovered that the exhibits to the Settlement Agreement were not finalized by reading the Settlement Agreement. Moreover, "the question of reasonable reliance is generally one of fact for

the jury[.]" *Kolstad v. Leehar Distribs., LLC*, 3:18-CV-00060, 2018 WL 6832086, at *4 (M.D. Tenn. Dec. 28, 2018) (quoting *J.C. Bradford & Co. v. S. Realty Partners*, No. W1999-01617-COA-R3-CV, 2000 WL 34411153, at *10 (Tenn. Ct. App. Aug. 14, 2000)). Thus, the Court cannot conclude at this stage that Plaintiffs' reliance on the JS Email was unreasonable as a matter of law. Accordingly, because there are genuine issues of material fact as to whether the exhibits were finalized when the JS Email was sent and whether Plaintiffs reasonably relied on the JS Email, Defendants' motion for summary judgment on Plaintiffs' negligent misrepresentation claim is denied.

### C. Breach of the Settlement Agreement

Defendants are entitled to summary judgment on Plaintiffs' claim and Defendants' counterclaim for breach of the Settlement Agreement because Defendants were the first to cure their material breach of the Settlement Agreement. "Under Tennessee law, a claimant asserting a breach of contract action 'must prove the existence of an enforceable contract, a deficiency in the performance amounting to a breach, and damages caused by the breach.'" *Flatiron I*, 2019 WL 1244294, at *6 (quoting *Fed. Ins. Co. v. Winters*, 354 S.W.3d 287, 291 (Tenn. 2011)). In *Flatiron I*, the Court held that "the Settlement Agreement created enforceable obligations between Paradiso, CapitalSource, and CapitalSource Finance." *Id.* at *6-7 (capitalization altered). The Settlement Agreement required Paradiso to convey certain of the Tellico Village Lots to the TVPOA via the Quitclaim Deeds and to assign its interest in the corresponding contract for deeds via the Assignments. Settlement Agreement § 1(i). The Settlement Agreement also jointly required Paradiso and the CapSource Defendants to record the Release Documents. *Id.* § 1(ii). The Court held in *Flatiron I* that it could not "conclude as a matter of law on a motion to dismiss that Paradiso breached the Settlement Agreement, that the alleged breach was material, and that Paradiso—as opposed to CapitalSource or CapitalSource Finance—committed the first material breach." 2019 WL 1244294, at *9.

Because "[t]here can be no recovery for damages on the theory of breach of contract by the party who himself breached the contract . . . [a] party who has materially breached a contract is not entitled to damages stemming from the other party's later material breach of the same contract" under Tennessee law. *United Brake Sys., Inc. v. Am. Envt'l Prot., Inc.*, 963 S.W.2d 749, 756 (Tenn. Ct. App. 1997) (quotations omitted). "Thus, in cases where both parties have not fully performed, it is necessary for the courts to determine which party is chargeable with the first uncured material breach." *Id.* (quoting *McClain v. Kimbrough Const. Co.*, 806 S.W.2d 194, 199 (Tenn. Ct. App. 1990)). Therefore, the Court must first determine if either or both of Plaintiffs and Defendants breached the Settlement Agreement. If both parties materially breached the contract, then the Court must determine which party committed the first uncured material breach.

### 1. Materiality of Breaches

Paradiso's failure to execute the Quitclaim Deeds and the Assignments and both parties' failure to record the Release Documents were material breaches. Under the Settlement Agreement, all three of these obligations were required to be performed by August 19, 2013. Settlement Agreement § 1(i)-(ii), 3. None of these obligations were performed by August 19, 2013. Hence, both Plaintiffs and Defendants breached the Settlement Agreement.

These breaches were material. As the Court noted in *Flatiron I*, "[t]he clear trend in Tennessee is to apply the test found in section 241 of the Restatement (Second) of Contracts" to evaluate whether a breach is material. 2019 WL 1244294, at *8 (citing *State v. Howington*, 907 S.W.2d 403, 410-411 (Tenn. 1995); *DePasquale v. Chamberlain*, 282 S.W.3d 47, 53-54 (Tenn. Ct. App. 2008); *Adams TV of Memphis, Inc. v. ComCorp of Tenn., Inc.*, 969 S.W.2d 917, 921 (Tenn. Ct. App. 1997)). "The factors found in the Restatement (Second) are:

> (a) the extent to which the injured party will be deprived of the benefit which he reasonably expected;

(b) the extent to which the injured party can be adequately compensated for the part of that benefit of which he will be deprived;

(c) the extent to which the party failing to perform or to offer to perform will suffer forfeiture;

(d) the likelihood that the party failing to perform or to offer to perform will cure his failure, taking account of all the circumstances including any reasonable assurances;

(e) the extent to which the behavior of the party failing to perform or to offer to perform comports with standards of good faith and fair dealing.

*Id.* (quoting *Madden Phillips Const., Inc. v. GGAT Dev. Corp.*, 315 S.W.3d 800, 822-23 (Tenn. Ct. App. 2009)).

Here, both parties were deprived of the benefits they reasonably expected from the Settlement Agreement—namely, an end to litigation with the TVPOA regarding the Tellico Village Lots. Indeed, the failure to perform these obligations led to the 2015 Monroe County Lawsuit and, ultimately, this litigation. Paradiso paid $330,000 to the TVPOA to settle the 2015 Monroe County Lawsuit. Counter 56.1 Stmt ¶ 84. The CapSource Defendants also entered into a separate settlement with the TVPOA related to the 2015 Monroe County Lawsuit. And both parties have expended yet further resources litigating this case. Consequently, the Court concludes that these breaches were material. *Cf. Spec's Fam. Partners, Ltd. v. First Data Merchant Servs. Corp.*, 2:14-CV-02995-JPM-CGC, 2017 WL 4547168, at *9 (W.D. Tenn. July 7, 2017) (applying Tennessee law and concluding that a breach of a contract was material at the summary judgment stage); *Spec's Family Partners, Ltd. v. First Data Merch. Servs. LLC*, 777 F. App'x 785, 792 (6th Cir. 2019) (affirming this conclusion).

### 2. Cure

The CapSource Defendants cured their breach. As noted above, both the CapSource Defendants and Paradiso materially breached the Settlement Agreement by failing to record the

Release Documents by August 19, 2013. This breach was cured when the Release Documents were recorded in September 2014 by the TVPOA. *See* Declaration of Jessica Johnson In Support of Motion for Summary Judgment Dated August 9, 2019, Dkt No. 115, ¶ 3. Paradiso also materially breached the Settlement Agreement by failing to deliver the Assignments to the TVPOA. However, Paradiso had still failed to deliver the Assignments in 2016. *See* Declaration of Jessica Johnson Dated April 13, 2016, Ex. D to Fornos Decl., Dkt No. 99-4, ¶ 18 ("At present, [Paradiso] has also still failed to assign most of the receivable accounts/contract rights corresponding to portion of the Property conveyed to [the] TPOA's designee as required by the [Settlement] Agreement[.]").

Consequently, the record before the Court establishes that there is no disputed issue of fact as to whether the CapSource Defendants cured their breach before Paradiso cured its breach. Thus, the Court can conclude as a matter of law that Paradiso committed the first uncured material breach. Accordingly, Defendants are entitled to summary judgment on Plaintiffs' claim for breach of the Settlement Agreement and their counterclaim for breach of the Settlement Agreement.[19]

### D. Declaratory Judgment

Defendants are entitled to summary judgment on their counterclaim for a declaratory judgment that CSE and CapSource Commercial are prevailing parties under the Purchase Agreement. Section 6.3(c) of the Purchase Agreement states:

> Attorneys' Fees. Notwithstanding anything to the contrary in this Agreement, in the event that either Seller or Buyer, as the case may be, shall bring a lawsuit against the other party for breach of such party's obligations under this Agreement, the losing party shall pay the prevailing party's costs and expenses incurred in connection with

---

[19] Paradiso's breach of contract claim is undermined by a separate fatal flaw: its inability to prove causation of any damages resulting from the breach. Paradiso's theory of damages rests on the fact that the Release Documents were not timely recorded by the CapSource Defendants. But Paradiso had a joint and several obligation to record the Release Documents by the same date as the Defendants here. To the extent that the failure to file the Release Documents caused Paradiso injury, Paradiso's own breach of the covenant was a co-equal cause of the resulting damages. As "[t]here can be no recovery for damages on the theory of breach of contract by the party who himself breached the contract," Paradiso cannot prove that the CapSource Defendants caused its damages here. *United Brake Sys., Inc.*, 963 S.W.at 756 (quoting *Santa Barbara Capital Corp. v. World Christian Radio Found., Inc.*, 491 S.W.2d 852, 857 (Tenn. Ct. App. 1972)).

> such litigation, including without limitation reasonable attorneys' fees. The "prevailing party" shall be determined by the court hearing such matter.

Purchase Agreement § 6.3. In the SAC, Plaintiffs asserted a claim for breach of the Purchase Agreement. *See Flatiron I*, 2019 WL 1244294, at *12-13. In *Flatiron I*, the Court granted Defendants' motion to dismiss that claim. *Id.* at *13. The Court's dismissal was "without leave to replead . . . because any attempt to replead on this basis would be futile." *Id.* Hence, Defendants CSE and CapitalSource Commercial Loan LLC, 2006-2 are prevailing parties for purposes of section 6.3(c) of the Purchase Agreement. Accordingly, Defendants are entitled to summary judgment on this claim.

## IV. CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is GRANTED in part and DENIED in part. Defendants are entitled to summary judgment with respect to Plaintiffs' claims under Tennessee lien law and for breach of the Settlement Agreement. Defendants are also entitled to summary judgment on their counterclaims for breach of the Settlement Agreement and for a declaratory judgment that CSE and CapSource Commercial are prevailing parties under the Purchase Agreement. However, Defendants' motion for summary judgment on Plaintiffs' negligent misrepresentation claim is denied.

The Court will hold a status conference in this case on March 2, 2020 at 4 p.m. The parties are directed to call Chambers (212-805-0296) at that time with all parties on the line.

The Clerk of Court is directed to terminate the motion pending at Dkt No. 96.

SO ORDERED.

Dated: February 20, 2020
    New York, New York

_____
GREGORY H. WOODS
United States District Judge